# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Involuntary |
| | ) | |
| EVOSHIELD, LLC | ) | Bankruptcy Case No.: 16-31159-JPS |
| | ) | |
|     Putative Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EVOSHIELD, LLC | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | Contested Matter |
| | ) | |
| DUGOUT VENTURES, LLC | ) | |
| | ) | |
|     Respondent. | ) | |
| _____ | ) | |

**EMERGENCY MOTION FOR ENTRY OF ORDER APPROVING SALE OF SUBSTANTIALLY ALL THE ASSETS OF THE PUTATIVE DEBTOR UNDER SECTIONS 303 AND 363 OF THE BANKRUPTCY CODE**

COMES NOW EvoShield, LLC, the putative debtor in the above captioned Chapter 11 case ("Debtor" or "EvoShield"), by and through the undersigned counsel, and hereby moves the Court pursuant to Sections 105, 303 and 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure, for an order approving the sale of certain assets of Debtor free and clear of liens, claims, and encumbrances. In support hereof, Debtor shows as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 303 and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent necessary, Debtor submits to the jurisdiction of the Bankruptcy Court.

## BACKGROUND

2. On October 31, 2016 (the "Petition Date"), Matt Stover, KB3Interests, LLC, and Juanita Markwalter (collectively, the "Petitioners") filed an involuntary petition for relief against EvoShield under Chapter 11 of the Bankruptcy Code (the "Petition"). EvoShield has yet to be served with the Petition and summons.

3. Prior to the Petition Date, on October 26, 2016, EvoShield and Wilson Sporting Goods Co. ("Wilson" or "Buyer") entered into an Asset Purchase Agreement, a copy of which is attached hereto as Exhibit "A" (the "Wilson APA"). Under the terms of the Wilson APA, Wilson agreed to purchase substantially all the assets of EvoShield at a closing stipulated to occur no later than November 15, 2016.[1]

4. The value of the Wilson APA to Debtor is in excess of $11,000,000. Specifically, under the terms of the Wilson APA Wilson is paying a cash purchase price of $7,982,000 (APA Section 6 (a)), $782,000 of which is to be deposited with a Tax Escrow Agent for payment of taxes pursuant to a Tax Payment Agreement, attached as Schedule 12 to the APA. In addition to the purchase price, Wilson is assuming certain Assumed Liabilities (APA Section 4) as identified on Schedule 3(a) to the APA.[2] The Assumed Liabilities on schedule 3(a) total $1,652,418.20. In

---

[1] The Closing Date under the Wilson APA was originally November 1, 2016, but Wilson and EvoShield have agreed to extend the Closing Date from November 1, 2016 to November 15, 2016.
[2] A conformed version of the exhibit without highlights is attached as Exhibit "A-1".

2

addition, Wilson has obtained the consents from the Parker Contracts (schedule 7.1 to APA) and EvoShield's landlord (schedule 7.3 to APA) at its distribution facility at 200 Whitehead Road in Bogart, Georgia to assign their agreements with EvoShield. The Parker Contracts relieve EvoShield from a $900,000 payment due March 1, 2017. Upon assignment of the lease of the facility at closing EvoShield will be relieved of future obligations under EvoShield's triple net warehouse lease which average over $25,000 per month. Additionally, EvoShield's President, Mike Van Alstyne has agreed to a noncompete agreement with Wilson effective upon closing with a $250,000 payment. Under the terms of this agreement, Mr. Van Alstyne is foregoing any rights under his employment contract with Debtor which Mr. Van Alstyne asserts is $300,000. Similarly, EvoShield's Chief Financial Officer, Russ Allen, has agreed to a noncompete agreement with Wilson effective upon closing with a $100,000 payment. Under the terms of this agreement, Mr. Allen is foregoing any rights under his employment contract with Debtor which Mr. Allen asserts is $150,000. Finally, a prompt closing will relieve the Debtor of the need to fund continuing operating losses which have been and continue to be substantial, totaling in excess of $1,000,000 over the last 90 days.

5. Debtor is not requesting authority to assume and assign any lease or executory contract to Wilson under 11 U.S.C Section 365. Accordingly, the assignment of any contract scheduled in the Wilson APA is subject to consent of the counterparty.

6. As set forth in Section 9(k) of the Wilson APA, Debtor retained an investment banker and conducted an extensive process for offering for sale EvoShield's assets to interested parties during 2016. Initially, approximately 80 institutional, strategic and individual investors were contacted and encouraged to make an offer for the assets. Thirty-seven parties signed

confidentiality agreements in this process, received marketing materials, and were provided access to an electronic data room.

7. Of the offers received in the initial process EvoShield received two offers deemed by the Board of Directors to be of superior value. One such offer was an offer to acquire the assets of EvoShield for $14.0 million, subject to a 30-day due diligence process. The other offer came from Dugout Ventures, LLC, the Respondent herein, ("DV") and the current and only secured creditor of EvoShield.[3], and contained an offer to acquire the equity of EvoShield at an enterprise value of $18.5 million, provided DV could effect the merger of EvoShield into another company in which DV claimed to hold 24 percent equity interest. DV advised the Board and the Company's other equity holders in a conference call that it had a high degree of confidence it could effectuate the merger and therefore consummate the acquisition of EvoShield. Based on this, and after extensive discussions between the board and the EvoShield equity holders (including economic concessions among the stakeholders) and an attempt by EvoShield's investment advisor (hereafter sometimes referred to as the "Consensus Companies") to improve the other bid, EvoShield moved forward with the DV transaction. Unfortunately, notwithstanding granting multiple extensions to DV to affect this merger, DV could not close the merger despite having nearly 75 days to do so.

8. EvoShield negotiated an amended loan agreement with DV that gave DV one more opportunity to complete its merger. The amended loan agreement was signed on September 6, 2016, and set forth in a Master Debt Restructuring and Amendment Agreement (the "Restructuring Agreement"). The Restructuring Agreement gave DV one more opportunity

---

[3] In late August 2016, subsequent to the submission of their offer to purchase EvoShield's assets, DV acquired the matured loan of EvoShield's senior secured lender, Wells Fargo Bank, N.A.

4

to complete the proposed merger with the third-party company in which it held a 24% interest. DV also agreed not to foreclose on the Company if the merger did not happen, but instead mandated that the Company be sold through a second controlled investment-banker-led auction process whereby multiple potential bidders would be solicited by the Consensus Companies, provided with updated due diligence materials and a draft Asset Purchase Agreement. The terms of the Restructuring Agreement allowed the second process to continue so long as at least one executable Asset Purchase Agreement was received by October 21, 2016 (which became the "Bid Deadline") in an amount greater than all amounts due and owing to DV, provided that the best such offer was closed by October 31, 2016 – the last date on which DV would allow its funds to be available to EvoShield.

9. The second auction process was required under the terms of the Restructuring Agreement if EvoShield wanted to avoid foreclosure and, as required under EvoShield's LLC Operating Agreement was authorized by the Board of Directors and had received the consent of its members to the prescribed process after notice. The only offer that substantially conformed to the approved auction process was the offer made by Wilson on October 20.[4] Between submission of its offer on October 20 and execution of the definitive agreement on October 26, 2016 , Wilson, after further negotiations, provided additional consideration of $1,919,000 consisting of $1,200,000 in cash, approximately $369,000 in the assumption of sales commissions (set forth on Schedule 3(a) to the Wilson APA) and $350,000 in non-compete payments consisting of $250,000 to EvoShield's President, Mike Van Alstyne and $100,000 to EvoShield's Chief Financial Officer, Russ Allen.

---

[4] DV made a nonconforming noncash offer that EvoShield believes on information and belief included the participation of one or more of the Petitioners.

5

10. The acceptance of Wilson's offer by EvoShield, as evidenced by the Wilson APA, is the result of significant deliberations, negotiation and efforts. A more detailed description of the process and EvoShield's marketing efforts is set forth in the Declaration of Michael A. O'Hara, to be filed substantially contemporaneously with the Sale Motion.

11. A timely sale of the Purchased Assets (as defined in Section 1(b) of the Wilson APA; hereafter "Purchased Assets") to Wilson on the terms set forth in the Wilson APA will realize the highest and best value for those assets for EvoShield's creditors.

12. Prompt consummation of the sale to Wilson on the terms set forth in the APA will avoid the additional administrative expenses that would arise in this bankruptcy case should the Court decline to authorize the sale on an expedited basis. In addition, consummation of the sale to Wilson under the Wilson APA eliminates the risk that Wilson will refuse to purchase the assets at a future date or insist on terms less favorable to EvoShield due to the delayed closing, including, without limitation, an administratively insolvent case without any distribution to unsecured creditors.

13. Wilson is not obligated to close on the Wilson APA if the Wilson APA is not approved expeditiously by the Court. EvoShield received no offers other than the Wilson APA that contained any cash payment to unsecured creditors. Therefore, there is substantial risk that the Debtor's estate will be administratively insolvent and that unsecured creditors will get no payment if the Wilson APA is not approved.

## APPLICABILITY OF SECTION 363 IN INVOLUNTARY GAP PERIOD

14. The Court obtained jurisdiction over the Debtor and its 11 U.S.C. § 541 property at the time the involuntary petition was filed. 11 U.S.C. § 541(a). *Rushton v. Woodbury &*

*Keller, P.C. (In re C.W. Mining Co.)*, 440 B.R. 878 (Bankr. D. Utah 2010). Section 1107(a) provides that "debtor in possession" means debtor in a chapter 11 case except when a trustee is serving, even during the involuntary gap period. *Id.*

15. Under 11 U.S.C. § 303(f), the Court may order that any use, transfer, or disposition of a putative debtor's assets outside the ordinary course of business be subject to the provisions of section 363 of the Bankruptcy Code. *In re C.W. Mining Co.*, 2008 Bankr. LEXIS 4840 (2008).

### RELIEF REQUESTED

16. By this Motion, Debtor seeks entry of one or more orders, making necessary factual findings, declaring necessary conclusions of law, and granting all relief requested, including, without limitation, approving the sale to Wilson under the terms of the Wilson APA, and granting other related relief, including a finding that the sale is in good faith as contemplated by § 363(m) of the Bankruptcy Code.

### BASIS FOR RELIEF
### APPROVAL OF THE SALE

17. Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105 of the Bankruptcy Code grants to the Court the authority to "issue any order, process or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18. Debtor further requests that the Court authorize the Debtor to pay the following at closing from the $7,200,000[5]: $5,000,000 to satisfy the principal amount owed to DV without prejudice to Debtor's and any third party to pursue any claim against DV and its principals or affiliates or any joint tortfeasor, including without limitation, any avoidance claims, $443,483.41 to pay Consensus Advisors, LLC and Consensus Securities, LLC, EvoShield's financial advisor retained by EvoShield pre-petition whose efforts directly resulted in the execution of the Wilson APA[6]; and any ad valorem personal property taxes (including any proration at closing) or transfer taxes. EvoShield further requests that from the remaining funds that $500,000 be held in escrow with the lien of DV to attach to secure any additional fees, charges and expenses of DV, and that the remaining funds, which would be $1,256,516.59 less payment of ad valorem and transfer taxes at closing, be available to EvoShield to use in the operations in the ordinary course of its business subject to a continuing lien in favor of DV, to the same extent and with the same priority and subject to the same defenses, objections, and rights of avoidance that would otherwise exist. Finally, EvoShield requests that the provisions of the Wilson APA providing for a tax escrow, Tax Escrow Agreement, Tax Escrow Agent and Tax Payment Agreement be authorized and approved.

19. Debtor shows that a sale free and clear of liens, claims, and encumbrances is authorized with regard to any holder of a claim secured by a lien, because DV is the only person with a known lien against the assets being sold and the price at which the property is to be sold is greater than the amount owed to DV.

---

[5] For avoidance of doubt also request authority that Wilson can deposit $782,000 with Tax Escrow Agent as provided for in the Wilson APA.
[6] Dugout Ventures, LLC has agreed to a fee Carve out in favor of Consensus Advisors, LLC and Consensus Securities, LLC, on September 22, 2016.

8

20. Debtor shows that the proposed sale under the terms of the Wilson APA is beneficial to and in the best interests of the estate and its creditors. The offer of Wilson as set forth in the Wilson APA is superior to all other offers received after two extensive processes conducted this year. The proposed sale will allow Debtor to obtain the maximum value its assets. If the Court does not approve the proposed sale to Wilson, it is likely that the value realized from the sale or other disposition of assets will be substantially lessened.

## A FINDING THAT THE SALE IS IN GOOD FAITH

21. Debtor further seeks the protections afforded to a purchaser with regard to sale transactions under § 363(m) of the Bankruptcy Code, which provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith.

22. Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986).

23. Debtor submits that the sale to Wilson as described in the Wilson APA is fair to Debtor's creditors. Debtor requests that the sale be afforded the protections of § 363(m) of the Bankruptcy Code. If the good faith of Debtor or Wilson is disputed, Debtor requests that such dispute be resolved at the sale hearing.

## OTHER REQUESTED RELIEF

24. Debtor further requests that the Court allow the sale to be consummated immediately as authorized by Bankruptcy Rule 6004(h).

25. Debtor further requests that to the extent necessary that the automatic stay of 11 U.S.C. Section 362 be modified to permit the implementation of the sale and the relief accorded by any order approving the sale including stay relief to any recipient of any payment as a result of the sale and to permit payment of sales taxes under the terms of the tax escrow established under the Wilson APA.

26. Finally, Debtor requests a finding that the Purchased Assets sold will be transferred to Wilson free and clear of all liens, claims, interests and encumbrances, pursuant to 11 U.S.C. Section 363, that the sale is authorized under 11 U.S.C. Section 303, that the sale cannot be subsequently avoided under the provisions of the Bankruptcy Code, and that the Debtor is authorized to execute such documents as may be reasonably necessary to effect the sale.

WHEREFORE, Debtor prays the Court enter one or more orders:

(a) approving the sale to Wilson under the Wilson APA on the terms set forth in Exhibit "A," and authorizing the Debtor to execute and deliver all such documents as necessary to affect the sales;

(b) finding that Debtor and Wilson have proceeded in good faith;

(c) finding that the Purchased Assets will be transferred to Wilson free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. Section 363, that

the sale is authorized under 11 U.S.C. Section 303, and that the sale cannot be subsequently avoided under the provisions of the Bankruptcy Code;

(d) authorizing the sale to be consummated immediately as authorized by Bankruptcy Rule 6004(h); and

(e) granting such other relief as is just and proper.

This 7th day of November, 2016.

LAMBERTH, CIFELLI, ELLIS
 & NASON, P.A.
**Attorneys for EvoShield, LLC, Putative Debtor**

/s/
James C. Cifelli
Georgia Bar. No. 125750
jcifelli@lcenlaw.com
Gregory D. Ellis
Georgia Bar No. 245310
gellis@lcenlaw.com
Stuart F. Clayton, Jr.
Georgia Bar No. 129743
sclayton@lcenlaw.com

1117 Perimeter Center West
Suite W212
Atlanta, GA  30338
Telephone:    404.262-7373
Facsimile:    404.262-9911