Exhibit A

## Confidentiality Agreement

THIS CONFIDENTIALITY AGREEMENT ("Agreement") is made on the date set forth below by and between EvoShield, LLC (the "Company") and the Contractor / Employee named below in connection with his or her employment by EvoShield, LLC.

     1.    Contractor / Employee understands that the Company is engaged in the business of developing sports apparel and protective gear that is proprietary to EvoShield, LLC. The Contractor / Employee further understands and acknowledges that as a Contractor / Employee of the Company, he/she has access to highly sensitive and confidential documents and information including fabric, designs, product plans, marketing plans, cost information, financial information, business plans, strategies, customer lists, legal information, and other information pertaining to the Company and its customers (the "Confidential Information"). Contractor / Employee agrees that he/she will hold in a fiduciary capacity and, in the strictest confidence any and all Confidential Information and will not, at any time during or subsequent to Contractor / Employee's employment, use or disclose to any individual or entity any Confidential Information that Contractor / Employee has acquired or may in the future acquire during employment by the Company except (i) in the performance of Contractor / Employee's duties for the Company, (ii) as authorized in writing by the Company, (iii) pursuant to compulsory process or order of a court or government authority after prompt written notice to the Company, or (iv) in submissions to a government authority as required by law or in pursuit of any claim or relief, provided that all reasonable efforts to preserve the confidentiality of such submission shall be made.

     2.    The following definitions shall apply to this Agreement: (a) "Confidential Information" means any non-public proprietary, sensitive, or confidential information, or documents containing such information, which relates to any company material owned or developed by the Company or by any third party entities for or on behalf of the Company, its employees or attorneys, or its customers, and which was received, created or copied in the course of the performance of Contractor / Employee's duties from any source, including, but not limited to, programs, directories, financial information, personnel information, computer technology, or related internal information, whether or not it rises to the level of information that is protected by law or privilege; and (b) "Documents" means originals or copies of files, memoranda, correspondence, notes, photographs, slides, overheads, audio or video tapes, cassettes, or disks, and records maintained on computer or other electronic media.

     3.    The parties agree that the breach of any provision of this Agreement, including, but not limited to, the unauthorized use or disclosure of any Confidential Information will cause irreparable and continuing injury to the Company and its member-clients and that there is no adequate remedy at law for such injury.

     4.    With respect to disputes arising under this Agreement, the parties agree that venue and jurisdiction are proper in any state or federal court lying within Oconee and Clarke County, Georgia, and they specifically consent to the jurisdiction and venue of such Court for the purpose of any proceedings contemplated by this paragraph. If any part of this Agreement is held void,

voidable, or otherwise unenforceable by any court or arbitrator, nothing contained herein shall limit the enforceability of any other part.

5.    The parties intend that all persons who, at the time of any dispute arising out of or relating to this Agreement, are current or former member-clients, customers, or employees of the Company are third-party beneficiaries of this Agreement who shall have the right to enforce all provisions of this Agreement.

6.    This Agreement contains the entire agreement between the parties concerning the matters covered by this Agreement. No representations, promises, or agreements, oral or otherwise, concerning the subject matter of this Agreement other than those embodied in this Agreement shall be valid or binding.

As a loyal employee of EvoShield, LLC, I, _____, agree to keep all information regarding EvoShield, LLC confidential. This includes but is not limited to information as specified in this agreement or as it relates to product development, company finances, product sales levels, and customer and/or vendor relationships. I will not share any information regarding EvoShield, LLC without prior consent from the company. Any such disclosure will require that a Non-Disclosure Agreement be signed between EvoShield, LLC and the counter-party prior to release of information.

Agreed to this _____ day of _____, _____.

_____
Signature of Contractor / Employee

_____
Printed Name of Contractor / Employee

ATL01/10828982v1

Exhibit B

## INVENTION/COPYRIGHT ASSIGNMENT AND SECRECY AGREEMENT

As part of the consideration for my employment hereafter by EvoShield, LLC or by one of its affiliates or successors in business (hereinafter called the "Company") and for the wages or salary now or hereafter to be paid to me during the continuation of such employment, I hereby agree as follows:

1. I agree to disclose fully to the Company all copyrightable materials, discoveries, inventions, improvements, or developments that are authored, conceived, developed, or reduced to practice, by me during the term of my employment, either solely or jointly with others, either (a) during my working hours, or (b) at the Company's expense, or (c) using any of the Company's materials or facilities, or (d) otherwise, but relating to the Company's business; all of which shall belong to the Company.

2. I agree to assign to the Company my entire right, title, and interest in and to all such copyrightable materials, discoveries, inventions, improvements, and developments, as well as any applications for patent or copyright registration thereon during and subsequent to my employment. I agree to assist the Company during and subsequent to my employment in every proper way in obtaining, at the Company's expense, protection for such inventions and copyrightable materials, and I will execute any and all lawful documents desired or required by the Company to achieve that end.

3. The following is a complete list of all inventions, patented or unpatented, and copyrightable materials that I have authored, conceived, developed, or reduced to practice within the scope of this Agreement prior to my employment with the Company. If blank, it will be presumed that there are none, if additional space is needed, please list what you can and add "SEE ATTACHED SHEET" for others):

_____

_____

_____

_____

I agree that all improvements made to the above-listed inventions or revisions of the above-listed copyrightable materials subsequent to my employment by the Company are to be the property of the Company if otherwise within the scope of Paragraph 1 above. On special limited occasions, this list of exclusions may be amended from time to time with the mutual written consent of both the Company and Employee.

4. I hereby acknowledge that in the course of my employment I will be exposed to and/or have access to valuable confidential information relating to the business or future business of the Company, possibly including but not limited to inventions, designs, drawings, engineering data, methods and processes, system architecture, manufacturing or testing techniques, improvements, business plans and strategies, pricing information and strategies, vendor identities and capabilities, customer identities and requirements, flow charts and computer software, and other private or confidential matters of the Company. I agree to hold all such information in strictest confidence, and not to disclose, directly or indirectly, any of such information to any unauthorized person. I further agree not to use any of such information for any purpose not authorized by the Company at any time during or subsequent to my employment.

5. At the time of leaving the employment of the Company, I will deliver to the Company and will not keep in my possession or deliver to anyone else any and all drawings, manuals, notes, memoranda, software, specifications, computer printouts, flowcharts, tapes, disks, documents, and other materials containing or disclosing any of the type of information referred to in this Agreement.

6. I will not disclose to the Company or use in my employment with the Company any trade secret or other confidential information of any former employer or other third party of which I may have knowledge without the express permission of the owner of such information.

7. This Agreement supersedes all earlier agreements, if any, between me and the Company relating to the subject matter of this Agreement. The Agreement may not be modified except by a written agreement signed by me and by an officer of the Company. If any of the provisions of this Agreement become or are found to be unenforceable for any reason, the remainder of the Agreement shall remain in full force and effect.

8. The provisions of this Agreement shall inure to the benefit of and shall be binding upon my heirs and personal representatives, as well as the Company and its successors and assigns. The obligations of this Agreement shall survive any termination of my employment with the Company.

9. The validity, operation, and performance of this Agreement shall be governed by the laws of the State of Georgia, and the terms and conditions of this Agreement shall be construed in accordance with the laws of this State.

I HEREBY CERTIFY THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT, AND I AGREE TO ABIDE BY ITS TERMS. I ACKNOWLEDGE THAT I HAVE RECEIVED A COPY OF THIS AGREEMENT.

Employee Signature: _____

Print Name: _____

Date Signed: _____



Exhibit C

# MUTUAL NON-DISCLOSURE AGREEMENT

This Agreement is made and entered into as of this date of ▬▬▬▬▬▬▬▬ between ▬▬▬▬▬▬▬▬, a corporation with principal offices located at ▬▬▬▬▬▬▬▬ and Evoshield, LLC, with offices located at 300 Commerce Blvd, Bogart, GA 30622 ("Evoshield").

Recipient and Evoshield plan to commence confidential discussions concerning the possibility of entering into a business arrangement. In the course of such discussions Evoshield and ▬▬▬▬▬▬▬▬ will be disclosing proprietary business information to each other.

NOW, THEREFORE, Recipient and Evoshield agree as follows:

1.    A.    Either Party shall hold and maintain in confidence any information disclosed to it and designated in writing as being proprietary or confidential information, (all such information in the aggregate referred to as "Confidential Information"). Confidential Information may include, without limitation, the existence and content of the negotiations and discussions regarding the contemplated business arrangement between the parties, financial information and records, sales, costs, and profit data, pricing information, customer lists, market information and all analyses, compilations, studies or other documents prepared by Evoshield or its representatives containing or based in whole or in part on any Confidential Information obtained from the Parties or their representatives.

      B.    To the extent practicable, Confidential Information shall be disclosed in documentary or tangible form. Confidential Information that is disclosed orally shall be subject to the terms hereof only if confirmed by Either Party in writing, to be proprietary, within ten days of disclosure. Notwithstanding anything in this Agreement to the contrary, the amount, type and items of Confidential Information disclosed by Either Party shall be solely within its discretion and it may refuse to disclose information if it believes that it is not in its best interest to do so. In addition, Neither Party makes any representation or warranties as to the accuracy or completeness of the Confidential Information disclosed to the Recipient.

2.    Both Parties agree on behalf of itself and its representative to (i) use the Confidential Information solely for the purposes of evaluating the contemplated business arrangement between the parties and not to use the Confidential Information in any way detrimental to The Other Party for any other purpose, (ii) not disclose the Confidential Information to any person (broadly interpreted to include without limitation any corporation, company, partnership and individual) without the prior written approval of The Other Party (iii) limit the disclosure of the Confidential Information to its representatives whose duties and responsibilities require the need to know the Confidential Information and then only provided that there is a clear understanding on the part of such representatives of their obligation to maintain the confidentiality of the Confidential Information in accordance with the terms hereof.

3.    All Confidential Information received by Either Party shall remain the property of The Providing Party, and upon the request of The Providing Party, or upon termination of this Agreement, shall be immediately returned to it, along with all copies, summaries and reproductions not previously destroyed.

4.    Nothing in this Agreement shall be construed as granting or conveying any rights by license or otherwise, express or implied, for any invention, discovery, or improvement made, conceived or acquired with respect to the Confidential Information prior to or after the date of this Agreement.

5.    No failures or delay by Either Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. Either Party shall be entitled to seek equitable relief, including injunction and specific performance, in the event of any breach of the non-disclosure provisions of this Agreement by the Recipient.

6.    This Agreement may be executed in counterparts, all of which together shall constitute one and the same document and any of which shall be deemed an original without productions of the other copies.

7.    This Agreement represents the entire understanding between Recipient and Evoshield pertaining to the Confidential Information and any prior agreements regarding said matters are hereby superseded.

8.    The obligation under this Agreement shall not apply to any portion of the Confidential Information which (i) is or becomes public knowledge through no fault of Either Party, (ii) is in the possession of the Receiving Party prior to disclosure to it by The Providing Party, (iii) is disclosed to Either Party without restriction on disclosure by a person who has the lawful right to disclose the information, or (iv) is disclosed pursuant to the lawful requirement or formal request of a governmental agency.  Nevertheless, in the event that Either Party or its representatives are requested or become legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation demand or similar process) to disclose any of the Confidential Information or the fact that the Confidential Information has been made available to Either Party or its representatives, Both Parties agree on behalf of itself and its representatives that The Other Party will be provided with prompt written notice of such requests so that The Other Party has the opportunity to pursue its legal and equitable remedies regarding such potential disclosure.  Notwithstanding the waiver by Both Parties of the provisions of this Agreement or its failure to obtain a protective order or other remedy, Both Parties agree on behalf of itself and its representatives to (a) only furnish that portion of the Confidential Information which is legally required, and (b) utilize the reasonable efforts to obtain reliable assurances that the person receiving such Confidential Information will maintain the confidentiality of the same.

9.    Either Party may terminate this Agreement upon written notice to The Other Party. Notwithstanding such termination, all rights and obligations hereunder shall survive with respect to the Confidential Information disclosed prior to such termination for a period of 4 years from the last disclosure of said Confidential or Proprietary Information.

10.    This Agreement shall be governed and construed in accordance with the Laws of the State of Georgia.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized representatives intending to be bound thereby.

**Recipient**

By: _____
             Duly Authorized

Print Name: _____

Company: _____

Address: _____

_____

Date: _____1/12/15_____

Evoshield, LLC.

By: _____

Print Name: _____

Date: ____1/12/15_____



## Schedule 1(h) – Purchased Assets – Books and Records

Seller's and any Seller Affiliate's books and records relating to Seller's Business, including, financial, customer, vendor and supplier records (the "Books and Records"); however, such Books and Records shall specifically exclude (i) any materials containing privileged communications or information about employees, disclosure of which would violate an employee's reasonable expectation of privacy and any other materials which are subject to attorney-client privilege or any other privilege or requirement to maintain confidentiality (including any rights to assert privilege); and (ii) Seller's corporate Books and Records relating to its governance, organization and existence.

Seller and Buyer shall reasonably discuss and agree upon a reasonable list of copies of any Books and Records to be retained by Seller to satisfy any post-Closing obligations of Seller or other obligations under law. Seller shall sign a reasonable non-disclosure agreement regarding such retained copies, and shall agree to destroy such copies when Seller's legal obligations are satisfied.

EvoShield initials: _____

Wilson initials: _N3_

## Schedule 1(i) – Purchased Assets – Other Assets

1. All goodwill of Seller or any Seller Affiliate associated with the Purchased Assets or Seller's Business operation, particularly in connection with the trademarks which are Purchased Assets.

2. Seller's right, if any, to receive any refunds with respect to any Tax paid to any Tax Authority relating to any Assumed Liability or any Sales Tax Obligations under the Tax Payment Agreement (Schedule 12).

3. The following other prepaid expenses, deposits (including security deposits), refunds, rebates and rights of Seller:

   $1,000 to American Baseball Coaches Association
   ~~[To be completed by Seller and Buyer between the Signing Date and the Closing Date]~~

   - Security Deposit in the amount of $3,000 with Red Bird Realty, LLC
4. Business Licenses and Permits. The following business licenses, consents, permits, variances, certifications and approvals of governmental agencies and any application therefor, to the extent assignable:

   ~~[If any are desired by the Buyer, this list to be completed by Seller and Buyer between the Signing Date and the Closing Date]~~ None

5. All of Seller's claims and causes of action against third parties for the collection of money arising as of or prior to the Closing, including the following known to Seller as of the Closing Date:

   See Exhibit B.
   ~~[To be completed by Seller and Buyer between the Signing Date and the Closing Date]~~

6. Seller's rights to the Wells Fargo Lockbox described in Exibit A attached hereto.

EvoShield initials: _____

Wilson initials: _____

10/27/2016

**Lockbox Profiles Report**

EVOSH609
Lockbox Profiles
As of Date: 10/27/2016

WELLS FARGO
10/27/2016 12:08 PM EDT
Customer ID: EVOSH609
Operator ID: JASONEDD

Commercial Electronic Office®M

$Exhibit$ $A$

Lockbox

### Lockboxes

| Number | Site | Lockbox Name | Image Storage Start Date | Image Storage Stop Date | Status | Retention Tier | Keyed Fields |
|--------|------|--------------|--------------------------|-------------------------|--------|----------------|--------------|
| 935949 | ATL | Evoshield LLC | 12/31/2012 | | Active | 1 Year | |

| Print || Close Window |

— end of report —



Exhibit B (182)

G60D - Receivables Control Corp
(763) 315-9600

EVC601 8653862769    OV
Eveshield LLC
Jason Eddy
300 Commerce Blvd
Athens, GA 30606

ALRO6101 RUN DATE  09/15/16  Account Activity Report                    Date: 01/01/0% -
09/15/16              PAGE 00001
CLIENT:  EVOC01  Eveshield LLC

| Current<br>Your Account Number<br>Balance  Stm Dak | Account Name | Account<br>Number | Assigned<br>Date | Assigned<br>Amount | Collected<br>Amount | Adjusted<br>Amount |
|---|---|---|---|---|---|---|
| 1000130 | EVEREST ATHLETICS | | 06/25/15 | 16,014.55 | 1,000.00 | .00 |
| 15,014.55  ACT | LEAK OFF PROMOTIONS | | 04/12/16 | 1,280.40 | .00 | .00 |
| 1000045 | | | | | | |
| 1,280.40  ACT | MAJOR LEAGUE STUFF | | 10/06/15 | 29,261.42 | 3,000.00 | .00 |
| 26,261.42  ACC | ORLANDO SCORPIONS | | 05/24/16 | 2,315.02 | .00 | .00 |
| 2,315.02  ACT | | | | | | |

                     Total Accounts         4            48,871.47   4,000.00           .00
44,871.47

| Status<br>%<br>Class<br>Recovery | Current<br>Status/Description<br>Balance | Total<br>Accounts | % of<br>Total | Assigned<br>Amount | Collected<br>Amount |
|---|---|---|---|---|---|
| Active<br>8.1% | ACT  Active<br>44,871.47<br>TOTALS: | 4<br>4 | 100.0%<br>100.0% | 48,871.47<br>48,871.47 | 4,000.00<br>4,000.00 |
| 8.1% | 44,871.47 | | | | |

                                         4   100.0%   48,871.47   4,000.00
8.1%   44,871.67



Exhibit B (2.F2)

Receivables Control Corp
7373 Kirkwood Court Suite 200
Minneapolis, MN  55369

G600  EV0001                          ACKNOWLEDGMENT
Evoshield LLC                         DATE   09/20/16
Jason Eddy                            thru   09/20/16
300 Commerce Blvd                     Page    1
Athens, GA  30606

We wish to acknowledge the accounts listed below which have been
assigned to this office for collection. You can call RCC at
763-315-9600.

| Reference No Name | Last Chg Date | Last Pay Date | Assigned Amount | Our Ref Number |
|---|---|---|---|---|
| | 09/20/16 | | 1395.45 | 0006489264 |
| ALL STAR ATHLETIC 1000439 | 02/29/16 | | 2935.68 | 0006489265 |
| BASEBALL BARGAINS 1002265 | 03/07/16 | | 19309.70 | 0006489266 |
| D-BAT FT WORTH 1000337 | 06/10/16 | | 1968.30 | 0006489263 |
| MONSTER BATS | | | | |
| AVERAGE AGE AT LISTING: | 126 DAYS | | 4 | 25609.13 |

Thank you for the opportunity to be of service to you.  These accounts
will receive the best service available in the industry.  Please
notify our Sales Dept if there are any changes to be made to the
information on these accounts. Thank you for your continued business.

## Schedule 2 – Certain Excluded Assets

This Schedule 2 sets forth certain Excluded Assets for clarity on their exclusion.

(a)     Cash. Seller's and any Seller Affiliate's cash or cash equivalents.

(b)     Organizational Documents. Seller's and any Seller Affiliate's original books and records related to its organization, existence and governance.

(c)     Employee Benefit Plans. Any interest or right to any assets held under any pension, profit sharing or other "*employee benefit plan*" (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended) or any bonus, compensation, deferred compensation, option, equity purchase, fringe benefit, post-retirement, scholarship, individual employment, payroll practice, retention, or other plan, agreement, policy or arrangement that is currently in effect or that has been approved for the benefit of any current or former manager, employee, or other person performing services for Seller (collectively, "Employee Benefit Plans").

(d)     Excluded Contracts. Any lease, rental agreement, contract, agreement, license, or similar agreement not identified as a Purchased Contract on **Schedule 1(g)** or which has terminated or expired prior to the Closing in accordance with its terms or in the ordinary course of the Business, including, without limitation, those contracts set forth on Schedule 2(a).

(e)     Rights Under Agreement. Seller's or any Seller Affiliate's rights under this Agreement and all cash and non-cash consideration payable or deliverable to Seller pursuant to the terms and provisions hereof.

EvoShield initials: _____

Wilson initials: _____

Schedule 2(a) – Certain Excluded Assets – Excluded Contracts    (3 pages) NL3

This Schedule 2(a) sets forth certain Excluded Contracts for clarity on their exclusion.

**Employee/Consultant Contracts**
Any and all contracts, agreements or understandings with any employees, including any of the
following current or former employees or consultants of Seller:     (except for standard Employee
Confidentiality Agreements or
Standard Employee Assignment
Agreements)

1. Mike Van Alstyne
2. Russ Allen
3. Stan Kanavage
4. Ciaran McDonnell
5. John Schulte
6. Stan Payne
7. Brad Gaff

**Leases**

Any and all leases, subleases, rental agreements, contracts, or agreements pertaining to real
property (other than as listed in Schedule 7.3) including, but not limited to, the real property
listed below:

1. 300 Commerce Boulevard, Athens, GA 30606

**Sales Representatives, Distributors and Retailers**

Any and all contracts, agreements or understandings with any sales representatives, distributors,
retailers, or other parties involved in Seller's distribution chain.

**Other Contracts**

Any and all contracts, agreements or understandings with or in relation to any of the following:

1. Duck Dynasty
2. Perfect Game USA
3. Never Too Late Enterprises, LLC
4. Dugout Media
5. Jeff Mazzoccoli
6. Mazz Enterprises, LLC

**Certain other Contracts to be Considered**

[The following contracts are among those to be considered by Buyer between the Signing Date
and the Closing Date]

| Entity | Purpose | Contract | Remarks |
|--------|---------|----------|---------|

EvoShield initials: _____

Wilson initials: _____

| E1 ✗ | ~~Exel~~ Noccess | Evo.Com Wildcard SSL Certificate | Annual contract. This is more like a product, it just expires if we don't renew | Annual ($149.95) |
|---|---|---|---|---|
| E2 | SAP (ECS) | ERP Software | Annual Maintenance Contract Through Dec 31. Written Notice prior to Dec 31 to Cancel | Annually ($15,300) |
| E3 | GoDaddy | Domain Names | Annual Renewal. If we don't renew they become available to anyone | Annually ($400~) |
| E4 ✗ | Magento | Evo.Com Platform | Annual w/ 30 Day Notice for Termination | Annual Payment ($23,270) |
| E5 ✗ | BetterCloud | Google Apps Management | Annual w/ 30 Day Notice for Termination | Annual ($1,701) |
| E6 ✗ | WebScale | Evo.Com Host | Annual w/ 60 Day Notice for Termination | Annual Contract Renewed on Sep 17th, 2016, Billed Monthly ($1,500) |
| E7 ✗ | Rainmaker Web Design | Contracted service provider for Magento backend services for Evoshield.com | Month to Month | Monthly ($1,625) |
| E8 | Authorize.net | Credit Card Processor | Month to Month | Monthly ($300~) |
| E9 ✗ | EasyLocator | Store Location Provider on Evo.com | Month to Month | Monthly ($19) |
| E10 | MailChimp | Marketing E-Mails | Month to Month | Monthly ($337.50) |
| E11 ✗ | Springbot | Web Site Tracking and Email Automation | Month to Month | Monthly ($199) |
| E12 | Endicia | DHL Shipping Software | Month to Month | Monthly ($34.95) |
| E13 ✗ | Shipworks | E-Comm Mass Payment Capture Software | Month to Month | Monthly ($29.90) |

✗ These contracts shall be added to the list of Purchased Contracts on Schedule 1 (g)

EvoShield initials: _____ VA

Wilson initials: _____ RW3

| # | Entity | Purpose | Contract | Remarks |
|---|--------|---------|----------|---------|
| E14 | GoToMeeting | Teleconferencing Software | Month to Month | Monthly ($59) |
| E15 | AT&T | Mobile | Month to Month | Monthly ($500~) |
| E16 ☆ | SPS Commerce | EDI & Retail Sales Data | Month to Month w/ 30 Day Notice for Termination | Monthly ($1,300~) |
| E17 ☆ | Pure Strategic | Manages our Evoshield.com site front end/promotions/events | Month to Month w/ 30 Day Notice for Termination | Contract is Month to Month. Billed Monthly ($9,500) |
| E18 ☆ | ROI Revolution | Manage SEO | Month to Month w/ 30 Day Notice for Termination | Billed Monthly ($2,475) |
| E19 | Windstream | Phone Service (T1) | Month to Month w/ 30 Day Notice for Termination | Monthly ($683.93) |
| E20 ☆ | Google Apps | EvoShield Google Email, Drive | No Contract | Monthly Vault ($385) Drive ($56) |
| E21 | Google Adwords | Google Advertising | Pay as you go | ROI manages Bing & Google search engines at a spend of $5,000 Month |
| E22 | Bing | Bing Advertising | Pay as you go | Monthly ($300~) |
| E23 | Yahoo | Yahoo Adevertising | Pay as you go | |
| E24 | Wiser (LaGrange) | MAPP policy administrator | Semi Annual, Have Given Notice for Termination | Contract ends on Dec 4th, 2016, Billed Semi-Annually ($4,794) |
| E25 | ZenDesk | Customer Support Software (Integrated with Phone System) | Yearly w/ 30 Day Notice for Termination | Billed Quarterly ($3,213) |
| E26 | Avalara | State Tax Calculation Interface; State Tax Filings | | Monthly fee ($977) |
| ☆ E27 | WebScale | Evo.com Host | Annual | Annual Fee ($18,000) |
| ☆ E28 | DNS | Domain Name Service | Month to Month | Monthly Fee ($5.00) |
| E29 | InSync | Connection between SAP and Magento | Annual | $1,830 |

☆ These contracts shall be added to the list of Purchased Contracts on Schedule 1(g)

EvoShield initials: ____

Wilson initials: ____

## Schedule 3 – Assumed Liabilities

The Assumed Liabilities under this Agreement shall be the following liabilities **ONLY**:

(a)    Solely those accounts payable of Seller to the accounts as listed on Schedule 3(a) attached hereto.

(b)    All liabilities under the Purchased Contracts as reflected on Schedule 1(g) accruing upon or following the Closing Date.

EvoShield initials: _____

Wilson initials: _____

Schedule 3(a) – Assumed Liabilities – Assumed Accounts Payable

| Payee | Balance as of 9/30/16 | Balance as of the Closing Date |
|---|---|---|
| **SUPPLIERS** | | |
| Robinson Mfg. Company Inc. | ($414,153) | 414,512.76 |
| Parker Medical Assoc., LLC | ($301,637) | 250,354.33 |
| EA International | ($240,694) | 240,694.04 |
| Richardson Cap. | ($94,169) | 179,225.53 |
| **ENDORSERS AND OTHER AP/E ACCOUNTS** | | |
| Major League Baseball Properties* | ($25,451) | 175,000.00 |
| Lakepoint Land, LLC | ($3,036) | 8,035.54 |
| National Pro Fastpitch | ($6,000) | 6,000.00 |
| Yadier Molina | ($5,000) | 5,000.00 |
| Jessica Mendoza | ($5,000) | 5000.00 |
| American Baseball Coaches Assoc. | ($1,575) | 1,575.00 |
| Joey Gallo | ($1,500) | 1500.00 |
| Chris Bostick | ($1,000) | 0 |
| Christian Yelich | ($1,000) | 1000.00 |
| Enrique Hernandez | ($1,000) | 0 |

In addition, Buyer agrees to assume those portions of the
accounts payable for sales reps as listed in the "Recommended"
column of the attached schedule up to a total amount of no
more than $369,021. For the avoidance of doubt, Buyer shall
only be assuming a portion of such payables as indicated, and
In no event shall Buyer be assuming any contract or other
agreement with any sales reps. In addition, Buyer's
obligation to pay such payables shall be subject to Seller's
providing appropriate back-up to support such payable.

BvoShield Initials: _____

Wilson Initials: _____

Schedule 3(a) continued

| Vendor Name | Balance Due | Recommended | Wilson has agreed to pay the following % of total commissions owed today |
|---|---|---|---|
| Never Too Late Enterprises, LLC | ($141,970) | ($171,297) | 120.7% |
| HM. Wittington & Assoc Inc. | ($123,694) | ($100,000) | 80.8% |
| Ted Hartzler Sales | ($42,338) | ($21,169) | 50.0% |
| John Schulte | ($24,263) | ($12,132) | 50.0% |
| Tom Theis | ($22,820) | ($11,410) | 50.0% |
| BA Sales Agency (Dave Gignac) | ($21,117) | ($15,602) | 73.9% |
| Githens and Assoc. | ($19,851) | ($9,925) | 50.0% |
| Steve Bush Sales | ($12,869) | ($6,435) | 50.0% |
| avsix sports | ($12,129) | ($6,064) | 50.0% |
| Howard Willis Sales | ($8,186) | ($4,093) | 50.0% |
| Icon Medical-John Miller | ($7,279) | $0 | |
| Sullivan Assoc. | ($6,168) | ($4,026) | 65.3% |
| RW Sport Sales | ($6,068) | ($3,034) | 50.0% |
| Randy Snyder Sales, LLC | ($3,339) | ($1,669) | 50.0% |
| Greg Hanson Sales Ltd | ($1,061) | ($530) | 50.0% |
| TG&S Sportswear Sales | ($850) | ($425) | 50.0% |
| Archibald Team Sales Inc | ($605) | ($302) | 50.0% |
| MacNeill Agencies | ($541) | ($270) | 50.0% |
| Mike Stanford | ($392) | ($196) | 50.0% |
| TC Sports Marketing Inc | ($334) | ($167) | 50.0% |
| Agence Sportive SP Inc | ($289) | ($144) | 50.0% |
| Gauch Sports Marketing | ($257) | ($128) | 50.0% |
| | ($456,418) | ($369,021) | 80.9% |



## Schedule 4 – Certain Excluded Liabilities

This Schedule 4 sets forth certain Excluded Liabilities for clarity on their exclusion.

(a)     Indebtedness. Liabilities of Seller or any Seller Affiliate for all of its indebtedness, including (i) for borrowed money under any indenture, credit agreement, loan agreement, note, mortgage, security agreement, loan commitment, capital lease, or other agreement relating to the borrowing of funds by Seller or an extension of credit to Seller or any Seller Affiliate, from banks or other parties or (ii) indebtedness to any creditor, lender, shareholder, preferred shareholder, member under any shareholder agreement, equity agreement, security agreement, membership agreement or other agreement;

(b)     Tax Liabilities. Liabilities for Taxes of Seller or any Seller Affiliate. [To be discussed in connection with finalizing the Tax Payment Agreement]

(c)     Environmental Liabilities. Any and all environmental liabilities of Seller or any Seller Affiliate relating to the ownership or operation of any real property by Seller or any Seller Affiliate or otherwise pertaining to any Environmental Law at any time. "Environmental Law" means any Law that is related to (i) pollution, contamination, cleanup, preservation, protection, reclamation or remediation of the environment, (ii) environmental health or safety, or (iii) the management or release of any Hazardous Substance, including the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., the Clean Air Act, 42 U.S.C. § 7401 et seq., the Clean Water Act, 33 U.S.C. § 1251 et seq., the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq., the Safe Drinking Water Act, 42 U.S.C. § 300f et seq., the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 et seq., and any analogous state statute. "Hazardous Substances" means all substances defined, listed, or otherwise classified as pollutants, toxic substances, hazardous substances, regulated substances, hazardous materials, hazardous waste, or extremely hazardous waste under any Environmental Law;

(d)     Products Sold Pre-Closing. Any liability in respect of products sold by Seller prior to the Closing, whether for personal injury, return of any goods from customers that were sold to the customer, on or prior to the Closing Date or arising from, caused by or arising out of any obligation to implement any consignment return, warranty return, replacement, retrofit, modification or recall campaign with respect to any product sold by Seller prior to the Closing;

(e)     Employee Benefit Obligations. Any liability or obligation to any employee or any liability under any Employee Benefit Plan and relating to the employment or termination of its employees, including all obligations with respect to any unfunded or underfunded Employee Benefit Plan, and all obligations with respect to any bonus, 401(k) match, deferred compensation, commission or similar compensation related to or earned by any current or former employee for any period or portion of any period ending on a prior to the Closing Date and all Taxes that are due in connection with or as a result of the payment of such obligation;

EvoShield initials: _____

Wilson initials: _____

(f)     Excluded Contract Liabilities.  The liabilities of Seller or any Seller Affiliate under and pursuant to the Excluded Contracts and any liability under a Purchased Contract accruing prior to the Closing Date;

(g)     Excluded Assets.  Any debts, liabilities or obligations whatsoever related to any Excluded Assets;

(h)     Seller Transaction Expenses.  All fees, costs, expenses and payments of Seller or any Seller Affiliate incurred in connection with the negotiation, preparation and execution of this Agreement and the consummation of the transactions contemplated hereby.

(i)     Bulk Sales Laws.  All liabilities of Buyer under any bulk transfer law or any common law doctrine of de facto merger or successor liability which is related to, the result of or arises out of the transactions contemplated hereby.

EvoShield initials: _____

Wilson initials: _____

## Schedule 5 – Purchase Price Wire Transfer Instructions

### (excluding the Tax Escrow Amount)

Bank Name:                    Sun Trust Bank
Bank Address:             P.O. Box 4418, Mail Code GA-ATL-0287Atlanta,
                               Atlanta, GA 30302

Beneficiary:                 Cohen Pollock Merlin & Small, P.C., Trust Account
Beneficiary Account Number:
Bank Routing / ABA Number:
Bank SWIFT Code:

Reference:                  EvoShield Auction

Upon Buyer's wire transfer of the funds in accordance with this Schedule and the APA, Seller agrees to disburse the Purchase Price, or to direct its counsel to disburse the Purchase Price, in accordance with the Funds Flow Memorandum to be delivered by Seller to Buyer prior to Closing.

EvoShield initials: _____

Wilson initials: _____

## Schedule 6 – Purchase Price Allocation

Purchase Price Allocation - U.S. Tax
EvoShield Acquisition, October 27 2010

| | |
|---|---|
| Purchase Price | 7,982,000 (*) |
| Assumed Liabilities | 1,046,215 |
| Total Purchase Price | 9,028,215 |

| | |
|---|---|
| Cash and Cash Equivalents (Class I assets) | - |
| Accounts Receivable (Class III assets) | 1,274,409 |
| Inventory (Class IV assets) | 4,586,642 |
| Fixed Assets (Class V assets) | 708,643 |
| Intangible Assets (Class VI and VII assets) | 2,458,621 |
| | 9,028,215 |

Check   -

(*) To be updated
as needed due
to the $369,021
of additional
Assumed liabilities
for sales commissions
shown on Schedule 3(d).

SW3

SW3

EvoShield initials: ___VA___

Wilson initials: ___SW3___

## Schedule 7 - Required Consents on certain Purchased Contracts

See attached consents to assignment:

- Schedule 7.1: Parker Contracts

- Schedule 7.2: MLB License Agreement

- Schedule 7.3: Red Bird Realty (Warehouse)

EvoShield initials: _VA_

Wilson initials: _WB_

## Schedule 7.1: Consent to Assignment – Parker Contracts

Parker Athletic Products, LLC and Parker Medical Associates, LLC, both North Carolina limited liability companies and Bruce Parker, an individual residing in North Carolina (collectively "Parker") and EvoShield, LLC are parties to four agreements (collectively "Parker Contracts"). EvoShield is in the process of selling its key operating assets. Wilson Sporting Goods Co. ("Wilson") is an interested party, and desires to purchase EvoShield's key operating assets, including the Parker Contracts. The "Parties" herein are Parker and Wilson should a Closing occur as described herein.

In the event that Wilson does in fact purchase EvoShield's key operating assets (a "Closing"), including the Parker Contracts, Parker and Wilson agree to the following:

1. The Parker Contracts are comprised of: (1) a Manufacturing and License Agreement dated April 1, 2006; (2) a Modification and Purchase Agreement entered into on December 20, 2013 (the "Modification Agreement"); (3) a Guaranteed Supply Agreement entered into on December 20, 2013 (the "Guaranteed Supply Agreement"); and (4) a Settlement and Modification Agreement dated April 3, 2016.

2. The Parker Contracts are in full force and effect. The Parker Contracts represent all of the agreements, commitments, or understandings of any kind currently in effect between Parker and EvoShield. There are no current defaults in the Parker Contracts by Parker or EvoShield. There are no current events that might result in termination with the passage of time.

3. The Parties agree that the EvoShield's purchases under the Parker Contracts are:
   a. $   2,200,615   already delivered by Parker to EvoShield in 2016;
   b. $     443,668   on order, to be delivered by Parker to EvoShield in 2016; and
   c. $     121,800   on order, to be delivered by Parker to EvoShield in 2017.

4. The Parties agree that the current amount owed by EvoShield to Parker is:
   $   316,048  .

5. The Parties agree that Attachment 7.1(a) is the price list in effect under the Parker Contracts for the years 2016-2017.

6. Upon a Closing, Parker will receive a one-time payment of $900,000 (the "Payment") under the Parker Contracts. Wilson may elect (but shall not be required) to make the Payment directly to Parker by wire transfer as set forth below (and may elect for Wilson's accounting purposes to treat such Payment as part of the Purchase Price payable by Wilson to EvoShield), and in such case the payment will have the same effect as if the Payment had been made by EvoShield to Parker in accordance with the Parker Contracts.

Bank Name;   Wells Fargo, NA
Bank Address:  2910 South Blvd., Charlotte, NC 28209
Beneficiary:  Parker Medical Associates, LLC
Beneficiary Account Number: █████████
Bank Routing / ABA Number: █████████
Reference:

7. As of the Closing, and upon the Payment being made to Parker, Parker consents to the assignment of the Parker Contracts to Wilson.

8. As of the Closing, and upon the Payment being made to Parker, Parker and Wilson agree that, in the event that Wilson terminates the Guaranteed Supply Agreement on or after December 31, 2018, the exclusivity and non-competition restrictions in the Parker Contracts shall be of no further force and effect whatsoever, and each of Parker and Wilson shall thereafter be entitled to use the IP (as defined in the Modification Agreement), in perpetuity, to manufacture, sell, license, use, promote, market or distribute products or services within or outside their respective fields of use (as defined in the Modification Agreement) and to license and sublicense the IP to third parties.

9. If a Closing occurs with Wilson, Parker is ready, willing, and able to continue to supply to Wilson under the terms of the Parker Contracts.

10. As of the Closing, and upon the Payment being made to Parker, Parker fully releases EvoShield from any and all obligations or liabilities under the Parker Contracts, and agrees to look to Wilson for performance of the obligations of EvoShield under the Parker Contracts.

In the event that a Closing does not occur at all between Wilson and EvoShield, or in the event that a Closing does not occur by November 15, 2016, this Consent to Assignment shall terminate and have no force or effect.

Parker Athletic Products, LLC

Name: _A. Bruce Parker_____

Title: _Manager_____

Date: _October 25, 2016_____

Parker Medical Associates, LLC

Name: _A. Bruce Parker_____

Title: _Manager_____

Date: _October 25, 2016_____

Wilson Sporting Goods Co.

Name: _____

Title: _GENERAL COUNSEL_

Date: _OCTOBER 27, 2016_

_____
Bruce Parker

Date: _October 25, 2016_

APPROVED BY SELLER:

NAME: _JAMES M VAN ALSTYNE_

DATE: _October 28, 2016_

Attachment 7.1(a) – Parker Price List

| PMA Item Name | EvoShield Item No. | Description | Finished Price |
|---|---|---|---|
| Wrist Guard, Small | 150 | EVOSHIELD WRIST SHIELD INSERT | $ 2.30 |
| BB Hand Pad | 140 | 140 EvoShield Hand Shield | $ 2.80 |
| BB Youth Hand Pad | 140 Y | 140 Evoshield Hand Shield- YOUTH | $ 2.80 |
| Batter's Elbow | 91046L120 | Component Batters Elbow Guard | $ 7.00 |
| Batter's Youth Elbow | 91046L121 | Component Youth Batters Elbow Guard | $ 7.00 |
| MLB Rev Shin | 91046L130 | Component Batters Shin Guard | $ 7.15 |
| MLB Toe | 91046L131 | Component Batters Toe Guard | $ 6.35 |
| MLB Youth Rev Shin | 91046L132 | Component Youth Batters Shin Guard | $ 7.15 |
| MLB Youth Toe | 91046L133 | Component Youth Batters Toe Guard | $ 0.15 |
| HB Thumb, Large | 130-H MLB | 130-H MLB STAMPED HOURGLASS THUMB GUARD | $ 9.05 |
| HG Thumb, Small | 130-H S MLB | 130-H MLB SMALL CATCHERS HOURGLASS THUMB GUARD | $ 9.05 |
| Oval Thumb | 130-O | 130 EVOSHIELD OVAL MULTI PURPOSE GUARD | $ 9.60 |
| BB Chest Large | 100CL | EVOSHIELD 100/101 LARGE CHEST SHIELD | $ 8.20 |
| BB Chest Medium | 100CM | EVOSHIELD 100/101 MEDIUM CHEST SHIELD | $ 7.80 |
| BB Chest Small | 100CS | EVOSHIELD 100/101 SMALL CHEST SHIELD | $ 7.40 |
| BB Chest X Small | 100CXS | EVOSHIELD 100/101 X-SMALL CHEST SHIELD | $ 7.00 |
| BB Rib Large | 100RL | EVOSHIELD 100/101 LARGE RIB SHIELDS | $ 6.00 |
| BB Rib Medium | 100RM | EVOSHIELD 100/101 MEDIUM RIB SHIELDS | $ 6.00 |
| BB Rib Small | 100RS | EVOSHIELD 100/101 SMALL RIB SHIELDS | $ 6.00 |
| BB Rib X Small | 101RXS | EVOSHIELD 100/101 X-SMALL RIB SHIELDS | $ 6.00 |
| FB Rib, Youth | 800RY | EVOSHIELD 800 RIB YOUTH PAIR | $ 10.00 |
| FB Rib, Small | 800RS | EVOSHIELD 800 RIB SMALL 6" X 10" PAIR | $ 10.00 |
| FB Rib, Large | 800RL | EVOSHIELD 800 RIB LARGE 7" X 12" PAIR | $ 12.00 |
| FB Rib, XL | 800RXL | EVOSHIELD 800 RIB X-LARGE 7" X 14"  PAIR | $ 13.50 |
|  | 092055330.001.LGXL | Component- CustomTech EvoAlpha Football Rib Shield Pair Black Large XL | $ 12.00 |
|  | 892055380.001.SMMD | Component- CustomTech EvoAlpha Football Rib Shield Pair Black Small Medium | $ 10.00 |
|  | 992055381.001.Y | Component- CustomTech EvoAlpha Football Rib Shield Pair Black Youth | $ 9.00 |
| PK-3, Large | 400L PK3 | EVOSHIELD PK3 SHIN GUARDS LARGE PAIR NOCSAE | $ 9.00 |
| PK-3, Medium | 400M PK3 | EVOSHIELD PK3 SHIN GUARDS: MEDIUM PAIR NOCSAE | $ 9.00 |
| PK-3, Small | 400S PK3 | EVOSHIELD PK3 SHIN GUARDS: SMALL PAIR NOCSAE | $ 8.50 |
| PK2- Medium | 400M PK2 | EVOSHIELD PK2 SHIN GUARDS: MEDIUM PAIR INTERNATIONAL | $ 8.00 |
| PK2- Small | 400S PK2 | PK2 EVOSHIELD SHIN GUARDS SMALL PAIR INTERNATIONAL | $ 7.50 |
| PK2- Extra Small | 400XS PK2 | PK2 EVOSHIELD SHIN GUARDS XSMALL PAIR INTERNATIONAL | $ 7.50 |
| Recoil, Mens | 200R | EVOSHIELD 200R RECOIL SHIELD | $ 7.00 |
| Recoil, Ladies | 200RS | EVOSHIELD 200RS RECOIL SHIELD-SMALL | $ 7.00 |
| Recoil, Oversized | 200R-OS | EVOSHIELD 202ROS RECOIL SHIELD | $ 7.50 |
| Forearm Guard | 171 | 171 EVOSHIELD FOREARM SHIELD ONLY | $ 7.75 |
| Fewarm Hand Shield | 149BLK LH | LEFT Top of Hand Shield- Black | $ 9.50 |
| Fream Hand Shield | 149BLK RH | RIGHT Top of Hand Shield- Black | $ 9.50 |
|  | 500BLK L | EVOSHIELD A500 THIGH GUARD PAIR LARGE- BLACK | $ 9.00 |
|  | 500BLK S | EVOSHIELD A500 THIGH GUARD PAIR SMALL- BLACK | $ 9.00 |
|  | 500WHT L | EVOSHIELD A500 THIGH GUARD PAIR LARGE- WHITE | $ 9.00 |
|  | 500WHT S | EVOSHIELD A500 THIGH GUARD PAIR SMALL- WHITE | $ 9.00 |
|  | 2044110.CCC | Custom Equipment Baseball Shin and Toe: Double Ankle Shin and Toe | $ 14.10 |
| High Shin | 2044110.CCC | Custom Equipment Baseball Shin and Toe: No Ankle Shin | $ 10.00 |
| MLB Tall Reversible Shin | 2044110.CCC | Custom Equipment Baseball Shin and Toe: 13" Tall Shin and Toe | $ 14.10 |
| Escobar BB Elbow | 2044120.CCC | Custom Equipment Baseball Elbow Double Strap Elbow | $ 9.20 |
|  | GAUZE | Component Gauze | $ 0.10 |
| Epic Strap | 188 STRAP | 188 Epic Arm Strap | $ 0.60 |
| Custom Setup Fee | Setup Charge | Custom Setup Fee | $ 25.00 |

JA

| PMA Item Name | EvoShield Item No. | Description | Costed Price |
|---|---|---|---|
| Wrist Guard, Small | 150 EVO PROD | 150 WRIST COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 1.50 |
| BB Hand Pad | 140 EVO PROD | 140 ADULT HAND SHIELD COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 1.80 |
| BB Youth Hand Pad | 140 Y EVO PROD | 140 YOUTH HAND SHIELD COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 1.80 |
| Batter's Elbow | 120 BLK MLB EVO PROD | 120 BLACK MLB ELBOW COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 5.00 |
| Batter's Youth Elbow | NO SKU | | $ 5.00 |
| MLB Bay Skin & Toe | 310 MLD EVO PROD | 310 BLACK COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 10.00 |
| HG Thumb, Large | 130-H L MLB EVO PROD | 130-H MLB HOURGLASS THUMB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 2.10 |
| HG Thumb, Small | 130-H S MLD EVO PROD | 130-H MLB Small Hourglass Thumb Components For Production At EvoShield | $ 2.00 |
| Oval Thumb | 130-O EVO PROD | 130-O OVAL THUMB COMPONENTS FOR PRODUCTION AT EVOSHIELD | 2.40 |
| BB Chest Large | | | $ 5.85 |
| BB Chest Medium | 100CM EVO PROD | 100CM MEDIUM CHEST COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 5.50 |
| BB Chest Small | 100CS EVO PROD | 100CS SMALL CHEST COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 5.15 |
| BB Chest X-Small | 100CXS EVO PROD | 100CXS X-SMALL CHEST COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 4.80 |
| BB Rib Large | 100RL EVO PROD | 100RL ADULT LARGE BASEBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 4.80 |
| BB Rib Medium | 100RM EVO PROD | 100RM ADULT MEDIUM BASEBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 4.50 |
| BB Rib Small | 100RS EVO PROD | 100RS ADULT SMALL BASEBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 4.50 |
| BB Rib X-Small | 100RXS EVO PROD | 100RXS ADULT X-SMALL BASEBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 4.50 |
| FB Rib, Youth | 500RY EVO PROD | 500RY YOUTH FOOTBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 7.50 |
| FB Rib, Small | 500RS EVO PROD | 500RS ADULT SMALL FOOTBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 7.50 |
| FB Rib, Large | 500RL EVO PROD | 500RL ADULT Large FOOTBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 0.00 |
| FB Rib, XL | 500RXL EVO PROD | 500RXL ADULT XL FOOTBALL RIB COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 11.50 |
| PK-3, Large | NO SKU | | $ 0.50 |
| PK-3, Medium | NO SKU | | $ 0.50 |
| PK-3, Small | NO SKU | | $ 0.50 |
| PK2- Medium | 400PX2 M EVO PROD | 400PX2 M SHIN GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - MEDIUM | $ 5.50 |
| PK2- Small | 400PX2 S EVO PROD | 400PX2 S SHIN GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - SMALL | $ 5.00 |
| PK2- Extra Small | 400PX2 XS EVO PROD | 400PX2 XS SHIN GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - X-SMALL | $ 6.00 |
| Recoil, Mens | 200R EVO PROD | 200R RECOIL SHIELD COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 5.00 |
| Recoil, Ladies | 200RS EVO PROD | 200RS RECOIL SHIELD SMALL COMPONENTS FOR PRODUCTION AT EVOSHIELD | $ 5.00 |
| Recoil, Oversized | NO SKU | | $ 6.50 |
| Forearm Guard | NO SKU | | $ 2.75 |
| Freeze Hand Shield | 149BLK LH EVO PROD | LEFT Top of Hand Shield - Black | $ 3.50 |
| Freeze Hand Shield | 149BLK RH EVO PROD | RIGHT Top of Hand Shield - Black | $ 3.50 |
| | 204411.CCC EVO PROD | Custom Equipment Baseball Shin and Toe | 4.00 |
| High Shin | 2044150.CCC EVO PROD | Custom Equipment Baseball Shin and Toe | $ 7.50 |
| MLB Tall Reversible Shin | 2044110.CCC EVO PROD | Custom Equipment Baseball Shin and Toe | $ 11.50 |
| Escobar BB Elbow | 2044120.CCC EVO PROD | Custom Equipment Baseball Elbow | $ |
| | 500BLK L EVO PROD | 500 BLACK THIGH GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - LARGE | 6.50 |
| | 500BLK S EVO PROD | 500 BLACK THIGH GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - SMALL | 6.50 |
| | 500WHT L EVO PROD | 500 WHITE THIGH GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - LARGE | 6.50 |
| | 500WHT S EVO PROD | 500 WHITE THIGH GUARDS; PAIR, COMPONENTS FOR PRODUCTION AT EVOSHIELD - SMALL | 6.50 |

EVO NEW ADULT CHEST        991047104.100.A Component G2S Adult Chest Shield        $7.65
EVO NEW YOUTH CHEST        991047105.100.Y Component G2S Youth Chest Shield        $7.25

**Schedule 7.2: Consent to Assignment – MLB License Agreement**

Major League Baseball Properties, Inc. ("MLB") and EvoShield, LLC ("EvoShield") are parties to a license agreement, namely Contract No. ML-4702(mb) (the "License Agreement"). EvoShield is in the process of selling its key operating assets. Wilson Sporting Goods Co. ("Wilson") is an interested party, and desires to purchase EvoShield's key operating assets, including the License Agreement.

In the event that Wilson does in fact purchase EvoShield's key operating assets (a "Closing"), including the License Agreement, MLB and Wilson agree to the following:

1. : The License Agreement is in full force and effect. There are no current defaults in the License Agreement by MLB or EvoShield. There are no current events that might result in termination with the passage of time.

2. As of the Closing, MLB agrees to the assignment of the License Agreement from EvoShield to Wilson, pursuant to Section 23 of the License Agreement.

3. Within 3 days after the Closing, Wilson shall pay to MLB an assignment fee of $_____, within 3 days after the closing date. The payment shall be made by wire transfer to MLB's account as follows:

    Bank Name:
    Bank Address:
    Beneficiary:
    Beneficiary Account Number:
    Bank Routing / ABA Number:
    Reference:

In the event that a Closing does not occur at all between Wilson and EvoShield, or in the event that a Closing does not occur by November 15, 2016, this Consent to Assignment shall terminate and have no force or effect.

*[Signatures to follow on the next page]*

Major League Baseball Properties, Inc.

Form approved by Wilson Sporting
Goods Co. (if acceptable to MLB, at
a mutually agreeable transfer fee to
be paid by Wilson)

_____

Name: _____

Name: _RAY BERENS_____

Title: _____

Title: _GENERAL COUNSEL_____

Date: _____

Date: _OCTOBER 27, 2016_____

Form approved by EvoShield, LLC (if acceptable to MLB):

Name: _____

Title: _President_____

Date: _October 28, 2016_____

### Schedule 7.3: Consent to Assignment – Red Bird Realty

Red Bird Realty, LLC ("Red Bird") and EvoShield, LLC ("EvoShield") are parties to a Triple Net Lease commencing on December 31, 2013, as amended on September 21, 2016 (the "Lease"). EvoShield is in the process of selling its key operating assets. Wilson Sporting Goods Co. ("Wilson") is an interested party, and desires to purchase EvoShield's key operating assets, including the Lease. In the event that Wilson does in fact purchase EvoShield's key operating assets (a "Closing"), EvoShield will assign its rights (including the security deposit) and its obligations under the Lease for the remainder of the Term.

A complete copy of the Lease is attached as Exhibit A to this Schedule 7.3.

Therefore, in the event that a Closing occurs, Wilson agrees that it shall become the assignee of the Lease and shall thereafter assume the rights and perform the obligations of EvoShield as Tenant under the Lease arising after the date of Closing, for the remainder of the Term. Red Bird consents to the assignment of the Lease to Wilson based on the foregoing agreement by Wilson; provided, that the Term shall be extended for 6 months to June 30, 2017 under the same terms and conditions, including the base monthly rental of ~~$20,000~~ per month.

$22,500

Red Bird informs Wilson that the Lease is in full force and effect. There are no current defaults in the Lease by Red Bird or EvoShield. There are no current conditions that would result in a default with the passage of time.

In the event that a Closing does not occur between Wilson and EvoShield, or in the event that a Closing does not occur by November 15, 2016, this Consent to Assignment shall terminate and have no force or effect.

Red Bird Realty, LLC                          Wilson Sporting Goods Co.

Name: _Marcus W_____                          Name: _Ray Brown_____

Title: _OWNER_____                            Title: _GENERAL COUNSEL_____

Date: _October 27, 2016_                      Date: _OCTOBER 27 2016_


Assignment at Closing approved by EvoShield, LLC:

Name: _____

Title: _PRESIDENT_____

Date: _OCTOBER 28, 2016_

## Schedule 8 – Exceptions to Seller's Representations and Warranties

1. Section 9(c) exceptions – regarding Title to and Conveyance of Purchased Assets:
   2008 Toyota Tacoma – related to loan from Georgia United Credit Union
   2008 Ford F750 – related to loan from Georgia United Credit Union
   Computer Equipment – related to two Dell Financing contracts
   ~~Bulton Comm Phone System – related to financing by Great American Financial Services~~ ← Buyer not purchasing.

2. Section 9(d) exceptions – regarding Sufficiency of Purchased Assets:
   None

3. Section 9(e) exceptions – regarding Condition of Purchased Assets:
   None

4. Section 9(f) exceptions – regarding No Material Undisclosed Liabilities:
   None

5. Section 9(g) exceptions – regarding Financial Statements; Ordinary Course of Business:
   Vastrade Contract Dispute - $17,195
   Letter dated 10/18/16 from O'Gorman Sandroni P.C. regarding Past Due Sales Commissions
   of $60,000+
   Letter from Kenny Baldwin a copy of which has been furnished to Buyer

6. Section 9(j) exceptions – No Claims:
   With respect to Secured Lenders, Seller's obligations are limited to obtaining all ~~necessary~~ appropriate
   and ~~required~~ lien releases and note cancellations with respect to the Purchased Assets.

7. Section 9(k) exceptions – regarding Asset Sale Process; Fair Value:
   None

### Schedule 8 Attachments

The September 30, 2016 balance sheet and profit and loss statement of Seller, in summary
and in more detailed formats, are attached to this **Schedule 8** in the following pages.

EvoShield initials: _____

Wilson initials: _____