**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| In re<br><br>EVOSHIELD, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 16-31159<br><br>JUDGE SMITH |

**RESPONSE OF PETITINONING CREDITORS TO EVOSHIELD, LLC'S EMERGENCY MOTION FOR ENTRY OF ORDER APPROVING SALE OF SUBSTANTIALLY ALL THE ASSETS OF THE PUTATIVE DEBTOR UNDER SECTIONS 303 AND 363 OF THE BANKRUPTCY CODE**

Petitioning creditors Matt Stover and KB3 Interests, LLC (collectively, the "Petitioning Creditors") hereby submits their response to the Debtor's *Amended Emergency Motion for Entry of Order Approving Sale of Substantially All the Assets of the Putative Debtor Under Sections 303 and 363 of the Bankruptcy Code* (Docket No. 11) (the "Sale Motion").

**PRELIMINARY STATEMENT**

The Petitioning Creditors do not object to some sale of the Debtor's assets. But at this stage in the bankruptcy proceeding, without the benefit of an open bidding process, the sale proposed in the Sale Motion is premature and inappropriate. The Bankruptcy Code simply does not permit the Debtor to sell assets free and clear of liens and other interests during the gap period. And even if an order for relief is entered, thereby ending the gap period, the Sale Motion cannot be approved because it completely disregards due process principles.

1

## BACKGROUND

The Petitioning Creditors each loaned money (collectively, the "Subordinated Loans") to EvoShield, LLC (the "Debtor") in July, 2014, evidenced by subordinated promissory notes dated July 18, 2014 and made subordinate to the indebtedness of Dugout Ventures, LLC ("Dugout") pursuant to those certain Subordination Agreements dated as of June 29, 2016 by and among Dugout, the Petitioning Creditors, and the Debtor. The Subordinated Loans matured on October 16, 2014 and remain due and owing.

Prior to the commencement of this proceeding, Dugout submitted a proposal to purchase the Debtor. The Petitioning Creditors understand that Dugout's offer will provide significantly greater payment in the form of cash plus equity to unsecured creditors than the transaction proposed in the Sale Motion. This transaction will be described in greater detail in Dugout's brief.

## ARGUMENT

The Petitioning Creditors oppose the relief requested in the Sale Motion because: (1) the Sale Motion is procedurally improper; (2) the Debtor cannot avail itself of the Bankruptcy Code's protections while refusing to consent to the involuntary proceeding brought against it; (3) the Sale Motion ignores the fundamental due process rights of creditors and other parties in interest; (4) the Court has not yet had the opportunity to determine whether the sale proposed in the Sale Motion (the "Sale") is the highest and best offer; and (5) the proposed allocation of sale proceeds contravenes the priority scheme set forth in the Bankruptcy Code by favoring certain creditors over others and before a transparent claims process occurs. Finally, the Petitioning Creditors request that if the Sale Motion is approved, this case be immediately converted to a proceeding under chapter 7.

### A. The Sale Motion Is Procedurally Improper

As a gatekeeping matter, the Debtor has provided no authority to support the proposition that a debtor may, prior to the entry of an order for relief in an involuntary bankruptcy proceeding, file a motion to sell its assets free and clear of liens and other encumbrances on an expedited basis. The Debtor relies on *Rushton v. Woodbury & Keller, P.C. (In re C.W. Mining Co.)*, 440 B.R. 878 (Bankr. Utah 2010) for the proposition that filing the Sale Motion during the "gap period" is procedurally proper. The Debtor's reliance on *C.W. Mining* is misplaced. That case stands for the unremarkable proposition that attorneys hired during the "gap period" must be disinterested and must disclose their compensation to the court. In no way does *C.W. Mining* confer on a gap-period debtor what is perhaps the most coveted feature of the Bankruptcy Code—the ability to conduct a sale of assets free and clear and liens and other interests. No case citing *C.W. Mining* has interpreted its holding as such. And to the extent *C.W. Mining* supports the notion that a gap-period debtor is a debtor-in-possession, the overwhelming weight of authority disagrees. *In re Roxy Roller Rink Joint Venture*, 73 B.R. 521, 527 (Bankr. S.D.N.Y. 1987) ("The statutory scheme makes it evident that Code § 1107(a) does not apply to the debtor during the involuntary gap period"); *In re E.D. Wilkins Grain Co.*, 235 B.R. 647, 650 (Bankr. E.D. Cal. 1999) ("During the period prior to entry of an order for relief, commonly referred to as the gap period, the debtor may continue to operate its business. . . This grant of authority, however, does not invest the debtor with the powers of a trustee") (internal citations omitted); *In re Sweports, Ltd.*, 476 B.R. 540, 545 (Bankr. N.D. Ill. 2012) ("An alleged debtor . . . has no authority to bind the bankruptcy estate during the gap period"); *In re Signature Apparel Grp. LLC*, No. 09-15378 (RG), 2015 WL 1009452, at *10 n.12 (Bankr. S.D.N.Y. Mar. 4, 2015) (the Bankruptcy Code imposes no duty of loyalty during the gap period because the alleged debtor is not a debtor-in-possession).

3

Put simply, the Debtor is not able to sell its assets free and clear of liens. Indeed, the Debtor may use, acquire or dispose of property as if the involuntary petition had not been filed. 11 U.S.C. § 303(f). But absent a bankruptcy proceeding, the Debtor would have no mechanism to sell its assets free and clear of liens, claims and other encumbrances. Thus, the Sale Motion requests relief far beyond the outer bounds of Section 303.

### B. The Debtor Cannot Have it Both Ways

The Petitioning Creditors initiated this bankruptcy proceeding by filing the involuntary bankruptcy petition on October 31, 2016. On November 7, 2016—mere minutes after the Petitioning Creditors filed notice of service of process upon the Debtor—the Debtor filed the Sale Motion and requested a hearing immediately. The urgency, according to the Debtor, is that Wilson Sporting Goods Co. ("Wilson") will abandon negotiations if a sale is not approved by November 15, 2016. The Debtor's request is unprecedented: the Debtor asks the Court to approve a private sale free and clear of liens, claims and other interests, but it has neither answered the involuntary petition, consented to the bankruptcy, nor provided the creditor body with sufficient notice of the Sale Motion.

Under the guise of a false deadline, the Debtor cannot cherry-pick which provisions of the Bankruptcy Code apply here. While the Bankruptcy Code grants a debtor-in-possession tremendous flexibility to, *inter alia*, sell its assets, cram down creditors, and pursue avoidance actions, the Bankruptcy Code also imposes a set of requirements to ensure a level playing field. The United States Trustee may appoint a committee of unsecured creditors, the court may appoint a chapter 11 trustee or examiner to monitor the bankruptcy case, and the Debtor must file detailed disclosure schedules and monthly operating reports. But here, where an order for relief has not yet been entered in an involuntary bankruptcy, the bulk of the Bankruptcy Code's safeguards have yet to spring into effect. The Sale Motion is an attempt to exploit this gap period by requesting what

4

is perhaps the most potent remedy the Bankruptcy Code offers—a sale free and clear of liens and other interests—all while evading the other requirements that ensure the bankruptcy process is fair for all stakeholders and parties in interest.

### C. The Sale Motion Ignores Basic Due Process Principles

Even if the Debtor consented to the involuntary bankruptcy proceeding, the Sale Motion is deficient because it ignores structural due process principles. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Sale Motion failed to provide that notice. The Debtor provided no notice of the Sale Motion itself to creditors, governmental agencies, taxing authorities, and other parties in interest. Although the order granting the Motion to Expedite (the "Order Granting Expedited Hearing") (Docket No. 18) provides that the order will be served on the United States Trustee, Dugout, and "all creditors and parties in interest which will be categorized on the certificate of service of this order and notice which will be filed with the Court," no such certificate of service has been filed as of the date of this filing.

The Order Granting Expedited Hearing also provides that any objection must be filed so that it is received at least three business days before the hearing. As of November 10, 2016, the certificate of service had not been filed. With the hearing set for Monday, November 14, creditors (other than the Petitioning Creditors) will have no opportunity at all to file an objection. "Notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Id.* Notice of the Sale Motion, if any is provided, cannot meet this standard. Accordingly, notice of the Sale Motion is constitutionally deficient.

5

**D. There Has Been No Opportunity to Scrutinize the Sale Motion or Review Alternate Bids**

As a preliminary matter, the Court must determine whether a sale free and clear of liens and other encumbrances is authorized in the first instance. Such sales are permissible when:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The Debtor asserts that Dugout is the only entity with a lien against the assets to be sold, and that the purchase price is greater than the amount owed to Dugout. At this early date, it is impossible to confirm whether this statement is true. In the words of the Supreme Court, "[t]he need for expedition . . . is not a justification for abandoning proper standards." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 420-21 (Bankr. S.D. Tex. 2009) (discussing section 363 sales, stating that "[t]he lack of transparency, the pace of the process, and the inconsistent treatment by the courts . . . leave the bankruptcy courts and parties in interest vulnerable to unfair dealing, abuse, and sweetheart deals") (internal citations omitted).

Even if a sale free and clear of liens is facially permissible, the Debtor still bears the burden of proving that: (1) there is a sound business justification for conducting the sale; (2) there has been adequate and reasonable notice of the sale; (3) the sale has been proposed in good faith; and

6

(4) the purchase price is fair and reasonable. *In re Tom's Foods, Inc.*, No. 05-40683, 2005 WL 3022022, at *2 (Bankr. M.D. Ga. Sept. 23, 2005) (quoting 3 Collier on Bankruptcy ¶ 362.02[1][f] (15th ed. rev. 2005)). Such a determination is particularly important where, as here, the Debtor has received additional offers. Each of the factors cited above militates in favor of denying the Sale Motion. The Debtor has failed to meet its burden of proving a sound business justification for conducting the sale. The Court has had no opportunity to compare competing bids, assess the sale price, or determine what steps, if any, the Debtor took to market its assets. With respect to the second factor, the Debtor filed the Sale Motion practically before the ink on the involuntary summons dried. And because schedules have not yet been filed, it is impossible to determine whether all creditors and other parties in interest received notice of the sale. With respect to the third factor, the Debtor's good faith, the Petitioning Creditors require an extensive evidentiary hearing in order to begin to understand how the Debtor in good faith could determine that the Wilson offer (coming in significantly lower than Dugout's given Dugout's proposed offer of equity to creditors in addition to cash) is the highest and best. For the same reasons, it is by no means clear that the purchase price is fair and reasonable. As the Second Circuit Court of Appeals cautioned, "a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

At bottom, approving a sale on a lightning-fast time frame limits the opportunity for the Court and parties in interest to conduct a meaningful review of the sale materials and forecloses the opportunity for third parties to submit overbids, a process which often yields more interested parties than a pre-bankruptcy process given the clean title to assets and additional protections

available to prospective purchasers under Bankruptcy Code Section 363(f). Accordingly, the Court should deny the Sale Motion and allow a robust bidding process to run its course.

### E. The Proposed Sale Improperly Favors Certain Creditors Over Others

One of the Bankruptcy Code's animating principals is equitably balancing the interests of different creditors. S. REP. No. 1106, at 1 (1978). The Sale Motion turns this concept on its head. It proposes to use sale proceeds to pay (1) Dugout; (2) its purported financial advisor, Consensus Securities, LLC ("Consensus") (as discussed in greater detail below); and (3) sales taxes. With the remaining funds, $500,000 is to be held in escrow, subject to Dugout's lien, and the Debtor is entitled to the rest to use as "operating expenses."[1] In a footnote, the Sale Motion requests authority to deposit $782,000 with a tax escrow agent (the "Tax Distribution"). The Sale Motion also proposes to pay insiders in connection with noncompete agreements. According to the Sale Motion, at closing, the Debtor will pay $250,000 to Mike Van Alstyne, the Debtor's president, and $100,000 to Russ Allen, the Debtor's Chief Financial Officer.

Fundamentally, the Sale Motion upends the Bankruptcy Code's priority scheme by favoring certain unsecured creditors—Consensus, unspecified taxing authorities, and insiders—while providing a materially lower recovery to the other unsecureds. Such a distribution while a case is in its infancy is improper and inappropriate. No sale proceeds should be distributed until creditors have had an opportunity to file claims and parties in interest have had an opportunity to object. *See* 11 U.S.C. § 502(a) (allowing any "party in interest" to object to a claim). Indeed, the Petitioning Creditors recognize that all or a portion of the Tax Distribution may be entitled to some degree of priority status. But until a claims process has been completed, it is impossible to be sure. Similarly, Consensus filed no fee application with the court and offered no testimony as to the

---

[1] The Debtor has offered no information to creditors to shed any light on what these "operating expenses" entail.

8

scope of its services. It is therefore impossible for creditors, other parties in interest, and the Court to determine whether such a fee is reasonable, separate and apart from the fact that there is no basis to pay Consensus or any unsecured creditor on account of pre-petition alleged debts, particularly while other unsecured creditors receive little or no distribution. Finally, payments to insiders before other unsecured creditors is both inappropriate and improper. To the extent these individuals have claims against the Debtor, the priority status of their claims would be limited to $12,850. 11 U.S.C. § 507(a)(4). Any amount claimed to be owed beyond that is a general unsecured claim. Paying certain unsecured creditors, some of whom are insiders, in full before other unsecured creditors receive a single penny offends the priority scheme Congress so carefully crafted.

**F. In the Event a Sale Is Approved, this Case Should Be Converted to Chapter 7**

In the event a sale is approved, this case should be converted to a case under chapter 7 of the Bankruptcy Code. Pursuant to Bankruptcy Code Section 1112(b)(1), conversion of a bankruptcy case from a chapter 11 to chapter 7 is mandatory when a party interest requests the conversion, conversion is in the best interests of creditors and the bankruptcy estate, and cause for conversion exists. 11 U.S.C. § 1112(b)(1). Among other things, "cause" includes the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A) and (B). For purposes of this section, "rehabilitation means to put back in good condition and reestablish on a sound basis." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010). Approval of the Sale Motion would do exactly the opposite by nullifying the very purpose of chapter 11 – to allow debtors an opportunity to reorganize and move forward as a going concern. *In re Antelope Technologies, Inc.*, 2010 WL 2901017 at *4 (S.D. Tex. July 21, 2010) ("[T]he purpose of Chapter 11 of the Bankruptcy Code is to assist financially distressed businesses by providing breathing space to reorganize."). With no

assets left to reorganize, there would be no reason for the Debtor to remain in chapter 11, continuing to pay management fees to run a company that is a mere shell. The Debtor would also benefit from the oversight of a chapter 7 trustee, who would have the opportunity to assess and object to claims against the bankruptcy estate as appropriate before any sale proceeds are distributed, and would investigate and recover avoidable transfers (including transfers made during the gap period).

## CONCLUSION

For the foregoing reasons, the Petitioning Creditors request that the Court deny the Sale Motion. In the event the Sale Motion is granted, the Petitioning Creditors request that this case be converted to a case under chapter 7 of the Bankruptcy Code.

Dated: November 10, 2016

Respectfully submitted,

MCGUIREWOODS LLP

By: /s/ Thomas R. Walker

Thomas R. Walker
Ga. Bar No. 732755
MCGUIREWOODS LLP
1230 Peachtree Street N.E., Suite 2100
Atlanta, Georgia 30309
(404) 443-5705
(404) 443-5763 (fax)
trwalker@mcguirewoods.com

-and-

James E. Van Horn
*Pro hac vice motion pending*
7 Saint Paul Street
Suite 1000
Baltimore, Maryland 21202
(410) 659-4468
(410) 659-4488
JVanHorn@mcguirewoods.com

*Counsel to Matt Stover*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2016, the *Response of Petitioning Creditors to the Amended Emergency Motion for Entry of Order Approving Sale of Substantially All the Assets of the Putative Debtor Under Sections 303 and 363 of the Bankruptcy Code* has been served on all parties receiving notice through the court's electronic case filing system and by first class mail to the following parties:

Juanita Markwalter
555 Argonne Drive
Atlanta, GA 30305

/s/ Thomas R. Walker