# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BASEBALL PROTECTIVE, LLC | ) | Bankruptcy Case No.: 16-31159 |
| f/k/a EvoShield, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CHAPTER 11 LIQUIDATION PLAN SUBMITTED BY:
## BASEBALL PROTECTIVE, LLC f/k/a EVOSHIELD, LLC
## DEBTOR AND DEBTOR IN POSSESSION

June 12, 2017

Filed by:

BASEBALL PROTECTIVE, LLC f/k/a EVOSHIELD, LLC
Debtor and Debtor in Possession

Attorneys for Debtor:
Gregory D. Ellis
Georgia Bar No. 245310

LAMBERTH, CIFELLI
 ELLIS & NASON, P.A.

1117 Perimeter Center West
Suite W212
Atlanta, GA  30338
(404) 262-7373
(404) 262-9911 (facsimile)
gellis@lcenlaw.com

INTRODUCTION

Pursuant to Title 11 of the United States Code, Baseball Protective, LLC f/k/a EvoShield, LLC (the "Debtor"), Chapter 11 debtor and debtor in possession, submits and proposes this "Chapter 11 Liquidation Plan Submitted by Baseball Protective, LLC f/k/a EvoShield, LLC, Debtor and Debtor in Possession" (the "Plan").

ARTICLE I
DEFINITIONS

Unless the context requires otherwise, the following terms shall have the respective meanings specified below whenever used in the Plan. Capitalized terms not defined in this Plan have the meanings ascribed to such terms in Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure. Accounting terms not defined in the Plan shall have the meanings ascribed to such terms in accordance with generally accepted accounting principles currently in effect. Whenever from the context it appears appropriate, terms stated in the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. The words "herein," "hereof," and "hereunder" and other words of similar import shall refer to this Plan as a whole, including any and all exhibits and schedules to the Plan, as the same may be amended.

"Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the estate and administering the Case that arose or accrued or that shall arise or accrue in the ordinary course of business during the period between the Petition Date and the Confirmation Date; (b) any Professional Fee Claim; and (c) any fee or charge assessed against the Debtor under 28 U.S.C. § 1930.

"Allowed Administrative Claim" means all or that portion of an Administrative Claim to the extent it has been allowed by a Final Order of the Bankruptcy Court.

"Allowed Gap Period Claim" means all or that portion of a Gap Period Claim to the extent it has been allowed by a Final Order of the Bankruptcy Court.

"Allowed Claim and Allowed . . . Claim" means a Claim that is not a Disputed Claim and is allowed under the Plan and, therefore, is not subject to disallowance, defense, reduction, avoidance, setoff, or subordination of any kind. The term "Allowed" or "Allowed Claim" also means any Claim to the extent: (a) such Claim is scheduled by Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined or disputed; or (b) a proof of such Claim was timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Order, or late filed, but with leave of the Bankruptcy Court, deemed timely, and, in either case, (i) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court or (ii) has otherwise been allowed by a Final Order or agreement of the Debtor. An Allowed Claim includes a previously

Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires.

"Avoidance Actions" means any claims, rights, defenses, or other causes of action arising under Chapter 5 of the Bankruptcy Code, including without limitation, Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553, or under similar state or federal statutes and common law, including state fraudulent transfer or preference laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date.

"Bankruptcy Code" means Title 11 of the United States Code, as amended, as applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Georgia, Athens Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable from time to time to the Case.

"Board Members" means Gordon Beckham, William Dore, Jr., James Ellis, Thomas Lamb and Graham Manley.

"Business Day" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

"Case" means the Debtor's Chapter 11 bankruptcy case.

"Cash" means lawful currency of the United States and its equivalents, provided, however, that any distributions under this Plan will be deemed to be made in Cash if made by check drawn on any United States bank, or by wire transfer.

"Causes of Action" means any and all claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity or Person, whether arising under the Bankruptcy Code or federal, state, common, or other law, regardless of whether the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date, or thereafter, including but not limited to: (a) all Avoidance Actions; (b) all other claims in avoidance, recovery, or subordination; and (c) all other actions described in the Disclosure Statement, any of the Schedules, or the Plan, including, without limitation, any claims against Dugout for lender liability or return of attorney fees, costs, and charges as provided for under applicable law.

"Claim" means a claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

2

"Claims Bar Date" means: (a) with respect to Claims arising from the rejection of an executory contract or unexpired lease (i) the date set in the order approving rejection of such executory contract or unexpired lease, or (ii) if the executory contract or unexpired lease is rejected under the Plan, the first Business Day that is thirty (30) days after the Effective Date; (b) with respect to Administrative Claims that accrued or were incurred during the period commencing after the Petition Date but prior to the Confirmation Date, the first Business Day that is thirty (30) days after the Effective Date or such other date set by the Court; (c) with respect to Priority Tax Claims, the first Business Day that is thirty (30) days after the Effective Date or such other date set by the Court; and (d) with respect to General Unsecured Claims, April 5, 2017, the date set forth in the Notice of Chapter 11 Bankruptcy Case (Doc No. 52) filed December 6, 2016.

"Class" means a class of Claims or Interests as defined in this Plan.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as may be adjourned by the Court from time to time without further notice other than announcement of the adjourned date of the Confirmation Hearing at such hearing.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan.

"Court" means the Bankruptcy Court or any other Court of the United States with authority over the Case or, with respect to any particular proceeding arising under or related to the Case, any other Court that is exercising jurisdiction over such proceeding.

"Creditor" means the Holder of a Claim against the Debtor.

"Debtor" means Baseball Protective, LLC f/k/a EvoShield, LLC.

"Designated Notice" means notice and an opportunity for a hearing as described in Section 102(1) of the Bankruptcy Code. Following entry of the Confirmation Order, the time for the giving of any notice shall be reduced to ten (10) days, and notice shall be limited to the Notice Parties. When a party gives Designated Notice and no written objection is served within ten (10) Business Days of service, the party to whom Designated Notice is given shall be presumed to have consented to or have no opposition to the relief or request identified in the Designated Notice. If a timely objection is served, the Court will hold a hearing on the objection on no less than five (5) days notice. Notwithstanding anything in this provision to the contrary, for twenty (20) days after the Confirmation Date, notice shall be provided to parties in interest entitled to notice pursuant to Bankruptcy Rule 2002(i) and Designated Notice shall not apply to any objection to a Claim.

"Disclosure Statement" means the Disclosure Statement filed with respect to this Plan, as approved by the Court and as may be further amended or modified.

"Disputed Claim or Disputed . . . Claim" means a Claim that (a) is not an Allowed Claim; (b) is not the subject of a Cause of Action or objection and that has not been allowed or disallowed by a Final Order; or (c) has been designated by the Debtor as a Disputed Claim.

"Distribution" means a distribution of Cash to a Claimant on account of an Allowed Claim pursuant to the terms of this Plan.

"Distribution Date" means any date on which distributions of Cash are to be made from the Distribution Fund.

"Distribution Fund" means the fund created and maintained in accordance with Section 4.06 of the Plan.

"Distribution Property" means all: (i) Cash on hand; (ii) Debtor's rights to any insurance or tax refunds; and (iii) any Tax Escrow Funds after payment of all Allowed Priority Tax Claims and fees and expenses of the Escrow Agent.

"Dugout" means Dugout Ventures, LLC.

"Effective Date" means the day that is the later of: (i) ten (10) Business Days after the Confirmation Date; or (ii) June 30, 2017.

"Equity Members" means the Holders of Interests in the Debtor.

"Exculpated Parties" means: (i) the Debtor; (ii) the Debtor's respective Professional Persons acting directly or indirectly in, relating to, or arising out of, their capacities as such; (iii) Sheron Moshell, Russ Allen, and Mike Van Alstyne acting directly or indirectly in, relating to, or arising out of, their capacities as an officer, employee, or agent of the Debtor; (iv) the Board Members acting directly or indirectly in, relating to, or arising out of, their capacities as member of the board or officers or directors of Debtor; and (v) Wilson.

"Final Decree" means a Final Order of the Bankruptcy Court closing the Case.

"Final Order" means an order or judgment of a Court (including one approving a settlement) entered on the docket which: (a) shall not have been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof shall have expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

"Gap Period Claims" means all Claims arising in the ordinary course of the Debtor's business or financial affairs after the Petition Date but before entry of the Order for Relief.

"General Unsecured Claims" means all Claims against the Debtor arising on or before the Petition Date that are not Administrative Claims, Gap Period Claims, Priority Tax Claims, or Secured Claims. General Unsecured Claims include Insider Claims and any Claims of any Creditor asserting a Lien, to the extent the Lien of such Creditor exceeds the value of the property to which such Lien attached.

"Holder" means the beneficial owner of any Claim or Interest.

"Impaired" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"Interests" means any and all ownership rights and interests in the Debtor held by the Equity Members as of the Petition Date.

"Lien" means any mortgage, lien, pledge, charge, security interest, encumbrance or other legally cognizable security device of any kind affecting or attaching to such property of the estate.

"Notice Parties" means: (i) with respect to notices served by the Debtor: the U.S. Trustee, the Board Members and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on the Debtor's counsel; or (ii) with respect to notices served by a party other than the Debtor: the Debtor and its counsel, the U.S. Trustee, and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on the Debtor's counsel.

"Operating Agreement" means the Fourth Amended and Restated Operating Agreement of Debtor dated as of October 17, 2014.

"Order for Relief" means the order of the Bankruptcy Court Granting Motion for Entry of Order for Relief entered in the Case on December 1, 2016.

"Petition Date" means October 31, 2016.

"Plan" means this plan proposed by the Proponent, as it may be amended or modified from time to time, including all exhibits and reports annexed hereto or referenced herein.

"Post-Confirmation Administrative Claims" means costs and expenses incurred, after the Confirmation Date, in connection with administration and consummation of this Plan, including, without limitation, Post-Confirmation Professional Fee Claims.

"Post-Confirmation Professional Fee Claims" means Post-Confirmation Administrative Claims for compensation earned, and reimbursement of expenses incurred, by attorneys, accountants, or other professionals employed by the Debtor.

5

"Priority Employee Claim" means a Claim that is entitled to priority under Section 507(a)(4) or (a)(5) of the Bankruptcy Code.

"Priority Tax Claim" means a Claim that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Pro Rata Share" means, with respect to any distribution to a Class under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which the ratio of the cumulative amount of all funds distributed on account of an Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the cumulative amount distributed to such Class to the total amount of all Allowed Claims and Disputed Claims classified into such Class.

"Professional Fee Claims" means Claims for compensation earned and reimbursement of expenses of attorneys, accountants, or other professionals employed by the Debtor, with approval of the Bankruptcy Court.

"Professional Persons" means attorneys, accountants, consultants, experts, financial advisors, investment bankers, and other professionals retained by Debtor in connection with the Case, the Wilson Sale, or in the implementation of the Plan.

"Proponent" means the Debtor.

"Sale Order" means that certain order entered in the Case as Docket No. 36 on November 16, 2016 authorizing the Debtor and Wilson to close the sale of assets pursuant to the terms of the Wilson APA.

"Secured Claim" means a Claim to the extent secured by a Lien on any property of any Debtor to the extent of the value of said property as provided in Section 506(a) of the Bankruptcy Code.

"Schedules" means the schedules of assets and liabilities and any amendments thereto filed by the Debtor in accordance with Section 521 of the Bankruptcy Code.

"Tax Escrow Funds" means the funds being held being held in escrow by Cohen Pollock Merlin & Small, P.C. as escrow agent pursuant to the Tax Escrow Agreement.

"Tax Escrow Agreement" means the tax escrow agreement between, Debtor, Wilson and Cohen Pollock Merlin & Small, P.C. made and entered into as of October 31, 2106 under which Wilson delivered as escrow agent the principal sum of Seven Hundred Eighty-two Thousand and 00/100 Dollars ($782,000.00).

"Tax Payment Agreement" means the Tax Payment Agreement between Debtor and Wilson executed pursuant to the terms of the Wilson APA filed as an exhibit to Docket No 8-6 Pages 21 through 24.

"Unclaimed Property" means any funds payable to Holders of Claims from the Distribution Fund that are unclaimed. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property.

"Unimpaired" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"Unpaid Claims Reserve" means the reserve created pursuant to Section 5.02 of the Plan.

"U.S. Trustee" means the United States Trustee for Region 21, and the office of such United States Trustee.

"Wilson" means Wilson Sporting Goods Co..

"Wilson APA" means the Asset Purchase Agreement between Debtor and Wilson dated October 26, 2016 and all schedules and exhibits thereto.

"Wilson Sale" means that certain sale pursuant to the Asset Purchase Agreement between Debtor and Wilson dated October 26, 2016 as authorized by the Sale Order.

ARTICLE II
TREATMENT OF UNCLASSIFIED CLAIMS;
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Pursuant to Section 1123 of the Bankruptcy Code, certain Claims are unclassified. Unclassified Claims are treated as follows:

2.01    Administrative Claims.  Allowed Administrative Claims are not classified in this Plan and are treated as follows:

(a)    Payment of Allowed Administrative Claims.  Holders of Allowed Administrative Claims other than Professional Fee Claims will be paid in full in cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof. Other than quarterly United States Trustee's fees, which will be paid as they come due, and Professional Fee Claims, which may be filed at any time prior to entry of a Final Decree, any request for payment of an Administrative Claim arising on or before the Confirmation Date must be filed no later than the Claims Bar Date or such Administrative Claim will be forever barred. The Debtor shall have the right to object to the allowance of any Administrative Claim.

(b)    Payment of Professional Fee Claims. Professional Fee Claims with regard to the period prior to entry of the Confirmation Order shall be paid in the amount

7

awarded pursuant to orders of the Bankruptcy Court and shall be paid in full in Cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof.

2.02    <u>Priority Tax Claims and Priority Employee Claims</u>. Holders of Priority Tax Claims and Priority Employee Claims shall be paid the full amount of their Allowed Claims (with legal interest) on the date that is no later than ninety (90) days after the Effective Date or thirty (30) days after such Claim becomes an Allowed Priority Tax Claim or Allowed Employee Priority Claim.

2.03    <u>Treatment of Other Certain Unclassified Claims</u>. Other unclassified Claims are treated as follows:

(a)    <u>Post-Confirmation Administrative Claims</u>. Post-Confirmation Administrative Claims, other than Post-Confirmation Professional Fee Claims, shall be paid as the same come due, without the necessity of Bankruptcy Court approval. Upon motion of any party in interest, the Bankruptcy Court may review any payment of such Post-Confirmation Administrative Claims and, if appropriate, order the return or refund of any such payment. Post-Confirmation Professional Fee Claims shall be subject to review by the Notice Parties. A party seeking payment of a Post-Confirmation Professional Fee Claim shall serve its invoice on the Notice Parties. Unless one or more of the Notice Parties files an objection with the Bankruptcy Court within twenty (20) days of the receipt of the invoice, the Debtor shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred. If an objection is filed, then the Debtor shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred that are not the subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed and shall be authorized to determine whether to allow any disputed Post-Confirmation Professional Fee Claims following a hearing on no less than ten (10) days notice to the parties to the dispute.

(b)    <u>Fees of U.S. Trustee</u>. Any pre-confirmation fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid within ten (10) business days after the Confirmation Date or upon their due date, whichever is later. Post-confirmation fees due the United States Trustee shall be paid on the date that such fees are due.

(c)    <u>Ad Valorem Tax Claims</u>. All ad valorem tax claims shall be paid in full on or before their due date.

2.04    <u>Treatment of Executory Contracts and Unexpired Leases</u>. Subject to the requirements of Section 365 of the Bankruptcy Code, all executory contracts and unexpired

leases which have not been previously rejected by order of the Court or otherwise expressly assumed by the Plan shall be rejected on the Effective Date.

    2.05    Assumption of Insurance Policies; Assignment of Rights. Each of the Debtor's insurance policies and any agreements, documents or instruments relating thereto (the "Insurance Policies"), unless previously cancelled, shall be treated as executory contracts under the Plan, and the Plan shall constitute a motion to assume the Insurance Policies. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to Bankruptcy Code Sections 365(a) and 1123(b)(2) and a finding by the Bankruptcy Court that such assumption is in the best interests of the Debtor and all parties in interest in the Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of Debtor existing as of the Confirmation Date. To the extent the Bankruptcy Court or Debtor determines otherwise as to any of the Insurance Policies, Debtor reserves the right to seek rejection of such Insurance Policy or other available relief.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS; IMPAIRMENT

    Claims and Interests are treated as set forth below.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that (a) the Claim or Interest is included within the description of that Class, and (b) the Claim or Interest is not included in any other Class.  To the extent that any portion or remainder of the Claim or Interest qualifies within the description of a different Class, that portion of the Claim or Interest shall be classified in that different Class. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been satisfied, disallowed or extinguished before the Effective Date of the Plan.

    3.01    Class 1 (General Unsecured Claims). Class 1 shall consist of all Allowed General Unsecured Claims. Creditors holding Allowed General Unsecured Claims shall receive, in full satisfaction, release and discharge of and in exchange for such Claims, their Pro Rata Share of any Cash Distribution from the Debtor to Holders of Allowed Unsecured Claims. The timing and nature of the Distributions to be made to the Holders of Allowed Unsecured Claims shall be governed by Article 5 of this Plan.

    3.02    Class 2 (Interests). Class 2 consists of the Holders of Interests. On the Effective Date, while all Interests in the Debtor shall be retained, the Holders of Class 3 Interests shall receive no property of any value under the Plan.

    3.03    Impairment. The Holders of Claims in Class 1 are Impaired under the Plan and are eligible to vote on the Plan.  The Holders of Interests in Class 2 are Impaired and will not receive or retain any property under the Plan, and, pursuant to Section 1126(g) of the Bankruptcy

9

Code, are deemed to reject the Plan, and, therefore, are not entitled to vote to accept or to reject the Plan.

## ARTICLE IV
## MEANS FOR EXECUTION OF THE PLAN

4.01    Funding of the Plan. Funds for Distributions to creditors shall come from the Distribution Property.

4.02    Management. The Debtor shall effect the consummation of the Plan. The Debtor shall be responsible for: (i) maintenance of the Distribution Fund; and (ii) Distributions of Cash from the Distribution Fund.

4.03    Authorizations. The entry of the Confirmation Order shall constitute authorization of the Debtor to take or cause to be taken any action necessary or appropriate to consummate the provisions of this Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All matters provided for under the Plan involving the structure of the Debtor in connection with the Plan, and any action required by the Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect. The Debtor shall be authorized to execute documents as may be necessary to effectuate the provisions of this Plan.

4.04    Objections to Claims.  Only the Debtor may file objections to Claims (whether filed, scheduled, or otherwise considered). All objections shall be resolved by the Bankruptcy Court unless settled as provided herein. Any objection to a Claim may be settled after the settling parties provide Designated Notice of the proposed settlement and there are no timely objections, and such Claim shall become an Allowed Claim without (i) further notice to any parties, and (ii) without the approval of the Bankruptcy Court. In the event of an objection, the Bankruptcy Court shall resolve the objection after notice and hearing.

4.05    Setoff Rights.  The Debtor may, but shall not be required to, setoff against any Claim, and against any Distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever which the Debtor may have against the Holder of such Allowed Claim, but neither the failure to do so nor the allowance of any Allowed Claim hereunder shall constitute a waiver or release of any such claim the Debtor may have against such Holder.  Nothing herein shall be construed to extend any statute of limitations provided by applicable law or to prevent the Debtor from filing an action.

4.06    Establishment of Distribution Fund.  Debtor shall either maintain its existing debtor-in-possession account or establish one or more segregated accounts to be known and designated as the Distribution Fund consisting of the Distribution Property. The funds in the Distribution Fund shall be held for the sole and exclusive benefit of those parties entitled to Distributions therefrom. The Distribution Fund may from time to time be invested in short term certificates of deposit, short term treasury bills, or money market accounts. All interest earned shall be retained in the Distribution Fund. The Debtor shall be authorized to open such bank or

other depository account or accounts as may be necessary or appropriate to carry out the provisions of the Plan.

4.07   Employment of Professionals. The Debtor may employ the professionals employed by the Debtor prior to the Confirmation Date. The Debtor shall be entitled to employ such additional professionals as may be necessary after the Confirmation Date.

4.08   Dissolution of the Debtor. Following (i) entry of a Final Decree and (ii) completion of all Distributions from the Distribution Fund, the Debtor shall take such steps as are necessary to effect dissolution of the Debtor under Delaware law. The Debtor shall be authorized to reserve from the final Distribution such amounts reasonably necessary to pay Post-Confirmation Administrative Claims and Post-Confirmation Professional Fees associated with such dissolution.  In the event the Debtor does not dissolve as contemplated hereby, the Debtor shall be authorized to amend its charter in accordance with Section 1123(a)(6) of the Bankruptcy Code.

4.09   Records Retention and Destruction Procedures.   The Debtor shall have no obligation to make expenditures or incur liability to preserve records. In no event shall Debtor have any obligation to preserve copies of any documents or electronically-stored information (ESI) that were transferred to Wilson. Any party in interest may file a notice and request for records preservation within 60 days of the Effective Date. Any such records preservation notice shall include an undertaking that the requesting party will pay the costs to preserve any requested records.  The Debtor shall be entitled to cause the destruction of any and all records (including ESI) after 60 days from the Effective Date if such records are not subject to a record preservation notice.

ARTICLE V
DISTRIBUTIONS

5.01   Distributions.

(a)   Distribution Fund. Funds in the Distribution Fund shall be used to pay the following items in the priority indicated:

   (1)   First, to pay all unpaid Allowed Administrative Claims in full;

   (2)   Second, to pay all unpaid Allowed Gap Period Claims in full;

   (3)   Third, to pay all unpaid Employee Priority Claims in full;

   (4)   Fourth, to pay all Allowed Priority Tax Claims in full;

   (4)   Fifth, to pay the Holders of General Unsecured Claims their Allowed Claims;

11

    (5)    Sixth, and only if General Unsecured Claims are paid 100% of their Allowed Claims, to pay the Holders of General Unsecured Claims interest on their Allowed Claims at a rate of 6% accruing from the Effective Date until paid; and

    (6)    Seventh, and only if all Allowed General Unsecured Claims are paid in full with interest accruing from and after the Effective Date until paid, Equity Members based upon their percentage right to distributions resulting from their Interests as determined by the Operating Agreement of the Debtor as of the Petition Date.

(b)    In the event the Debtor makes a Distribution to the Holders of Allowed Claims in a Class of less than the full amount of the Allowed Claims in the Class, the Holders of Allowed Claims in the Class entitled to participate in the Distribution shall receive a Pro Rata Share of such Distribution.

5.02    <u>Unclaimed Property</u>.  Unclaimed Property is treated as follows:

(a)    Unclaimed Property shall be deposited in the Unpaid Claims Reserve to be held in trust for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan.  For a period of six (6) months following the first Distribution or ninety (90) days after a Distribution is made to a Creditor on account of which Unclaimed Property first results (said period being hereinafter referred to as the "Claiming Period"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such Holder upon presentation of proper proof by such Holder of its entitlement thereto. In the event that there is Unclaimed Property in the Unpaid Claims Reserve with regard to any Claim, the Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, make all subsequent Distributions due with regard to such Claim to the Unpaid Claims Reserve.  After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied.

(b)    At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto, and the Unclaimed Property shall then be disbursed to the Distribution Fund for Distributions as set forth above.

(c)    The Unpaid Claims Reserve may be maintained in an interest bearing account. No Holder entitled to funds from the Unpaid Claims Reserve shall be entitled to interest with regard to the amounts due.

5.03    Supervision of Administration of Case and Distribution of Funds.  Maintenance and distribution of all amounts under the Plan and administration of the Case shall be subject to supervision of the Bankruptcy Court on application of any interested party.

5.04    Reserves.  In the event that an objection to a Claim is pending or the Debtor has designated a Claim as a Disputed Claim so that the Claim is a Disputed Claim, the Debtor shall not make any Distributions on account of such Claim until the Claim is an Allowed Claim.  With respect to General Unsecured Claims the Debtor shall reserve Cash for any Distribution that would have been made on account of the Claim has the Claim been an Allowed Claim. In addition to reserving for Disputed Claim, the Debtor shall establish a reasonable reserve to pay any unpaid Administrative Claims and Gap Period Claims. The Debtor shall also establish a reasonable reserve for Post-Confirmation Administrative Claims.  With respect to Priority Tax Claims the Debtor shall establish a reasonable reserve taking into account the Tax Escrow Funds in such amount as is agreed to by Debtor and Wilson; in the event the Debtor and Wilson cannot agree on an amount, the amount of the reserve shall be determined by the Court.  All Cash or other property allocable to the relevant reserve hereunder with respect to Disputed Claims shall be allocated for record keeping purposes only (and not as a separate or distinct fund or account and without interest), to the Disputed Claims Reserve with respect to the Initial Claims Distribution Date (or such other date on which distributions for any particular Class of Claims are made pursuant to the Plan). Once a Disputed Claim becomes an Allowed Claim, the Debtor shall pay on account of such Allowed Claim all Distributions to which such Allowed Claim would have been entitled had the Claim been an Allowed Claim when such Distributions were payable except for Priority Tax Claims which shall be paid pursuant to the terms of the Tax Escrow Agreement as modified by the Plan.

5.05    Distribution from Tax Escrow Funds.  Distributions from the Tax Escrow Funds shall be made to pay Allowed Priority Tax Claims and expenses of Cohen  Pollock  Merlin  & Small, P.C. as escrow agent pursuant to the Tax Escrow Agreement pursuant to the terms of the Tax Payment Agreement and Tax Escrow Agreement; provided, however, that in the event Wilson does not consent to a Distribution to pay an Allowed Priority Tax Claim the Debtor shall have the right to request the Bankruptcy Court to authorize such Distribution from the Tax Escrow Funds after Designated Notice to Wilson.

ARTICLE VI
EFFECT OF CONFIRMATION; VESTING OF PROPERTY; DISCHARGE

6.01    Effect of Confirmation; Vesting of Property; Continuation of Stay. Except as otherwise provided in the Plan or in the Confirmation Order, this Plan upon entry of the Confirmation Order shall be binding on all parties in interest, regardless of whether the Claims or Interests are impaired and regardless of whether the Holders have accepted the Plan. All of the property of the estate shall vest with the Debtor on the Effective Date free and clear of Liens, except as specifically provided herein.

6.02   Discharge.  Pursuant to Section 1141(d)(1) of the Bankruptcy Code, the Debtor shall not receive a discharge upon entry of the Confirmation Order confirming the Plan.

6.03   Retention of Estate Causes of Action/Reservation of Rights. The Debtor shall have, retain, reserve and be entitled to assert, prosecute, settle, or abandon, any and all Causes of Action.

6.04  Preservation of Insurance. Notwithstanding any contrary provision in the Plan or Confirmation Order, the Plan shall not diminish or impair the enforceability of Insurance Policies that may cover Claims against Debtor, its Estate, or its Assets or any other Person or Entity and all rights of the Debtor and any covered person under Insurance Policies are reserved.  Nothing contained in the Plan, or Confirmation Order shall be construed to alter any existing obligation of Debtor to indemnify, to the extent necessary to insure, any person or entity, including without limitation, any officers and/or directors of Debtor, entitled to indemnification pursuant to any Insurance Policies under applicable law.

6.05   Term of Injunctions or Stays. Until the Effective Date, all injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect. After the Effective Date, all injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the final Distribution Date or the Debtor's Chapter 11 Case is closed.

**6.06  Permanent Injunction.**

**(a)    Terms of Injunction.**  *Except as otherwise expressly provided in the Plan, or the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Equity in, the Debtor are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from taking any of the following actions against the Exculpated Parties on account of, in connection with, or related to, in any manner whatsoever, whether directly or indirectly, such Claims or Interests:  (a) commencing or continuing in any manner any action or other proceeding of any kind; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; (d) asserting any right of setoff, recoupment or subrogation of any kind; and (e) commencing or continuing in any manner or in any place any suit, action or other proceeding that does not comply with or is inconsistent with the provisions of the Plan.  The foregoing injunction will extend to successors of the Exculpated Parties.*

**(b)    Relief from Injunction.** *Any Person asserting a claim against one or more of the Exculpated Parties that is enjoined under Section 7.06(a) of the Plan and that is not otherwise exculpated under the Plan may seek relief from the injunction contained in Section 7.06(a) of the Plan by filing with the Bankruptcy Court an explanation of the claim against the, a description of the action(s) the holder desires to take on account of such claim and by*

14

*thereafter obtaining an order of the Bankruptcy Court allowing the holder to assert the claim. The Bankruptcy Court shall enter such order upon the finding that (i) the claim is for gross negligence, willful misconduct, or breach of fiduciary duty, (ii) verified facts sufficient to state a claim that is plausible on its face have been plead, (iii) the provisions of this Section 7.06(b) have been complied with, (iv) the claim the holder desires to assert was not exculpated under the terms of the Plan, and (v) the holder is acting in good faith in pursuit of such claim.*

**6.07    Exculpation.** *None of Exculpated Parties shall have or incur any liability whatsoever, in any form, to the Debtor, any holder of a Claim or Interest in the Debtor, or any other party in interest for any act or omission in connection with or arising out of the Case, the involvement of any of them in the filing and/or conduct of the Case, including the type or value of distributions, if any, reserved under the Plan for holders of Claims or Interests, the pursuit of and consummation of the Wilson Sale, the solicitation of votes for acceptance or rejection of the Plan, the pursuit of confirmation and consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, other than acts or omissions found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to constitute willful misconduct, gross negligence, or breach of fiduciary duty by such person or entity.*

## ARTICLE VII
## RETENTION OF JURISDICTION

7.01    <u>Jurisdiction</u>. Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    The determination of the allowability of Claims upon objection to such Claims by any party;

(b)    Determination of any objections to requests for payment of Administrative Claims or Gap Period Claims, including Professional Fee Claims;

(c)    Adjudication of any actions brought by or against the Debtor in the Bankruptcy Court before confirmation of the Plan;

(d)    Resolution of controversies and disputes regarding the interpretation and implementation of this Plan, including the determination of defaults under the Plan;

(e)    Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan; and

(f)    Determination of any tax liabilities pursuant to Section 505 of the Bankruptcy Code.

7.02    <u>Other Jurisdiction</u>. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then such matter shall be heard and determined by the District

Court for the Northern District of Georgia (the "District Court").  If the District Court does not have jurisdiction, then the matter may be brought before any Court having jurisdiction with regard thereto.

       7.03    Closing of Case. The Bankruptcy Court may, upon application of the Debtor after Designated Notice, determine that this Plan has been substantially consummated within 120 days after the Confirmation Date, notwithstanding the fact that additional funds may eventually be distributed.  In such event, the Bankruptcy Court may enter an order closing this case pursuant to Section 350 of the Bankruptcy Code, provided, however, that: (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; and (b) the Bankruptcy Court may from time to time reopen the case if appropriate for the purpose of enforcing provisions of the Plan or supervising its implementation, or for other cause.

ARTICLE VII
GENERAL PROVISIONS

       8.01    Modification of Plan. This Plan may be modified pursuant to Section 1127 of the Bankruptcy Code and as herein provided, to the extent permitted by applicable law.  The Plan may be modified, before or after confirmation, without notice or hearing, or on such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties which have not had notice and an opportunity to be heard with regard thereto. Without limiting the generality of the foregoing, the Plan may be modified after notice and hearing to an entity that requested notice pursuant to Bankruptcy Rule 2002(i). In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties which have cast said votes.

       8.02    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

       8.03    Binding Effect. The rights, duties and obligations of any entity named or referred to in this Plan shall be binding upon, and shall insure to the benefit of, the successors and assigns of such entity.

       8.04    Headings. The heading of the Articles and Sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

       8.05    Applicable Law.   Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

       8.06    Revocation of Plan. The Proponent reserves the right, unilaterally and unconditionally, to revoke and/or withdraw the Plan at any time prior to entry of the

Confirmation Order, and upon such revocation and/or withdrawal the Plan shall be deemed null and void and of no force and effect.

      8.07    <u>Supremacy Clause</u>.   In the event of any conflict between any Disclosure Statement and the Plan, the terms of the Plan shall control.

## ARTICLE IX
## REQUEST FOR CONFIRMATION PURSUANT TO SECTION 1129(b)

      In the event that all requirements for confirmation are met except the provisions of Section 1129(a)(8) of the Bankruptcy Code, the Debtor requests that the Plan be confirmed pursuant to Section 1129(b) of the Bankruptcy Code.

      Dated this 12th day of June 2017.

                              LAMBERTH, CIFELLI, STOKES,
                               ELLIS & NASON, P.A.
                              Attorneys for the Debtor


                            By:   /s/ Gregory D. Ellis
                               Gregory D. Ellis
                               Georgia Bar No. 245310